[No. 1140, June 29, 1906.]

TERRITORY OF NEW MEXICO, Appellee, v. JAMES H. RUSSELL, Appellant.

### SYLLABUS.

The phrase "domestic machinery," as used in Chapter 16 of the Session Laws of 1903, of New Mexico, does not include a buggy or wagon for use at the purchaser's home.

A statute forbidding the sale by an itinerant vendor of any except certain classes of articles without first obtaining a license to make such sales to any persons except dealers in such articles, but which makes no distinction between articles produced in New Mexico and those produced elsewhere, is not in violation of the provisions of the Constitution of the United States which gave Congress the exclusive right to regulate commerce between the states, or of those which forbid class legislation.

Appeal from the district court of San Juan county, before JOHN R. McFIE, Associate Justice. Affirmed.

RENEHAN & THOMPSON, for appellant.

The act upon which the complaint is predicated is Section 1, Chapter 16, Laws of 1903, p. 27, which reads as follows: "All persons who may engage in any itinerant trade, by sample or otherwise, selling at retail to individual purchasers who are not dealers in the article

Territory v. Russell.

sold, except in the selling of maps, books, newspapers, fuel, fruits and domestic machinery, shall be considered peddlers within the meaning of this act."

> Schiff v. State, 84 Ala., 457, and authorities cited.

The use of the words " by sample or otherwise" puts the act in direct conflict with that section of the Constitution delegating to Congress the power to regulate commerce between the several states.

> 12 Wall. 434, Ward v. Maryland.

Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce or on that which is carried on solely within the state.

> Robbins v. Shelby Taxing District, 120 U. S. 497; The State Freight Tax, 15 Wall. 232; Welton v. Missouri, 91 U. S.

"A state law exacting a license tax to enable a person within the state to solicit orders and make sales there for a person residing in another state, is repugnant to that clause of the Constitution of the United States which gives Congress the power to regulate commerce among the several states, and void."

> Asher v. Texas, 128 U. S. 129; Robbins v. Shelby Taxing District, 110 U. S. 489; See also, Railroad Company v. Pennsylvania, 134 U. S. 237.

Any law discriminating between the domestic and the products of other states is void. A state law requiring the payment of a license tax by dealers in goods not produced in the state is void.

> Anderson v. N. Y. 92 U. S. 274; McCreary v. State, 73 Ala. 482; State v. North, 27 Mo. 475; Arnold v. Yanders, 56 Ohio St. 520; Higgins v. Runker, 47 Texas, 390.

A carriage or a wagon is a household machine within the meaning of the statute.

> Central Trust Co. v. Sheffield, etc., Colgate Co. 42 Fed. Rep. 110.

"A machine is a piece of mechanism which, whether simple or compound, acts by a combination of mechanical

parts, that serve, to create or apply power to produce motion or regulate the effect."

Am. Enc. L. p. 604, Vol. 19.

"A machine is any contrivance which is used to regulate or modify the relations between force, motion and weight."

Bouvier's Law Dict., Vol. 2, p. 614.

"The term machine includes every mechanical device or combination of mechanical power and devices to perform some function and produce certain effects or result."

Corning v. Burden, 15 How. 267.

"A machine is an instrument composed of one or more of the mechanical powers and capable, when set in motion, of producing by its own operation, certain predetermined results."

Roberts, Pat. Sec. 873; Burr v. Duryee, 1 Wall, 531 and 570.

In this case the wheel and the axle is the necessary power referred to in the above.

"A machine is any vehicle, as a coach or gig."

Standard Dict.

"A machine is anything by means of which something else, as power, energy, thought, information, etc., is transmitted or communicated."

Standard Dict.; Alsup v. Jordan, 69 Tex. 304; Arthur v. Morgan, 112 U. S. 500.

Geo. W. Prichard, for appellee.

The statute under which the complaint and information was filed in this case is as follows:

"All persons who may engage in any itinerant trade, by sample or otherwise, selling at retail to individual purchasers, who are not dealers in the article sold, except in the selling of maps, books, newspapers, fuel, prints, and domestic machinery, shall be considered peddlers within the meaning of this act."

See 1 Chap. 16, p. 27, Session Laws of 1903.

The following facts were stipulated in the case in the court below: "It is hereby stipulated and agreed

between the parties for use in the trial of said cause in lieu of other evidence as follows:

That at the time when he (the defendant) is charged with having peddled and sold goods, the defendant was the agent and commercial traveler for Spaulding Manufacturing Company, a co-partnership composed of H. W., F. E., and E. H. Spaulding, doing business at Grinnell, Iowa, and exporting from that place throughout the United States, buggies, wagons and other vehicles, and citizens of Iowa and of the United States, and the defendant was then and there a citizen of Texas."

"That in said cause the said company shipped vehicles from Grinnell, Iowa, to Durango, Colorado, where they arrived knocked down and they were set up by the agents of said company and hauled thence, that is to say from Durango, where the said company maintained a warehouse, to different parts of said San Juan county (New Mexico), and sold from place to place, and delivered forthwith when sold as a purchaser might be found, and the facts herein set forth are applicable to the sale in the complaint charged."

"That the vehicles so sold including the ones in issue, were sold and delivered while in the same condition in which they were on being set up at and hauled from Durango, Colo."

The following conclusion may be stated as true from the foregoing stipulation:

1.    The appellant was an itinerant vendor or peddler.

2.    The goods brought into this Territory and disposed of by him were not sold to those engaged in the business of selling wagons, buggies and other vehicles.

3.    That the goods were sold at retail to individuals.

4.    That the goods sold do not come under the head of machinery.

Without referring to another authority we rely on the cases of:

Machine Co. v. Gage, 100 U. S. 676, and
Emert v. Missouri, 156 U. S. 296.

as settling every material point raised by the appellant in this case.

STATEMENT OF FACTS AND OPINION OF THE COURT.

ABBOTT, J.—The defendant was charged with peddling and selling goods without a license in said county on or about August 30, 1904, contrary to the provisions of Sections 4141 and 4149 of the Compiled Laws of 1897, as amended by Chapter 74 of the acts of 1901, and Chapter 16 of the acts of 1903, which forbid, under penalty, the sale by persons engaged in "itinerant trade," "by sample," o. "otherwise," "at retail to individual purchasers who are not dealers in the articles sold," of all articles except "maps, books, newspapers, fuel, fruits and domestic machinery," unless the persons so selling, termed "peddlers" shall first obtain licenses to pursue such occupation. The case was heard and the defendant found guilty on the following stipulation of facts:

"It is hereby stipulated and agreed between the parties, for use in the trial of said cause in lieu of other evidence, as follows:

"That at the time when he is charged with having peddled and sold goods, the defendant was the agent and commercial traveler of Spaulding Manufacturing Company, a copartnership composed of H. W., F. E., and E. H. Spaulding, doing business at Grinnell, Iowa, and exporting from that place throughout the United States, buggies, wagons and other vehicles, and citizens of Iowa and of the United States, and the defendant was then and there a citizen of the state of Texas.

"That in said cause the said company shipped vehicles from Grinnell, Iowa, to Durango, Colorado, where they arrived knocked down, and there they were set up by the agents of the said company and hauled thence, that is to say, from Durango, Colorado, where the said company maintained a warehouse, to different parts of said San Juan county, and sold, from place to place, and delivered forthwith, when sold, as a purchaser might be found, and the facts therein set forth are applicable to the sale in the complaint charged.

That the vehicles so sold, including the one in issue, were sold and delivered while in the same condition in which they were on being set up at and hauled from Durango, Colorado."

It is suggested rather than claimed in behalf of the defendant that the words "domestic machinery," in the statute, refer to machinery made within the Territory of New Mexico, as distinguished from that made elsewhere, and that if such is the case the statute is void. The nature of the other exceptions from the operation of the law sufficiently indicates that such was not the sense in which the phrase in question was used, and that the legislature had in view the benefit to families from the unrestricted sale of the excepted classes of goods, rather than protection to home industries. That, in fact, is the meaning which the defendant adopts in his further contention, presented with much ingenuity and force, that wagons and buggies are "domestic machinery," as being for family use, and that, therefore, the defendant in selling as an itinerant vendor to individuals, not dealers in such goods, did not violate the statute law under consideration. The word domestic, in its broadest significance, would undoubtedly include carriages, kept for use at and in connection with the owner's home. In Arthur v. Morgan, 112 U. S., 500, a carriage kept for home use in a foreign country, by the owner, was held to be exempt from import duty, when brought to this country for the same use by the owner on his return here to reside, as a part of his "domestic effects." And, strictly speaking, any wheel-vehicle is a machine, although popularly it is not so considered unless it carries its own motive power, like an automobile. But most words have different meanings in different connections, and besides, their ordinary and popular use is often entirely at variance with their scientific and legal significance. Certainly a wagon is not ordinarily spoken of, or thought of, as a "domestic machine," and no authority has been given us which makes it one by judicial construction. The words are generally used in a much more restricted sense, and we must search for the intention of the legislative assembly in order to determine whether they were used by it with the wider or the more limited meaning. The law may have been enacted for either one or all of those obvious purposes, namely, to raise revenue; to prevent irresponsible and dishonest persons from going about among the people of the

Territory in the guise of peddlers; to protect from unfair competition the local tradesmen, who, in addition to the other expenses incident to established places of business, are subject to taxes and license fees. Of the articles excepted from the operation of the law, maps, books, and newspapers, doubtless found favor on the ground that they are essential to the enlightenment of the people. Fuel is a prime necessity, and besides it is sold to a great extent, from house to house, near where it is produced, by vendors who are known to the purchasers, and so are not objectionable as unknown itinerants are. It is matter of common knowledge, too, that most of those who sell and those who buy wood, in the way described, are poor people, on whom the burden of license fees would rest heavily. Fruits, while not, like fuel, absolutely essential, are highly desirable for family use, and largely sold by those who grow them, near their homes. Similar reasons, in part, exist for excepting some articles, which would be classed as "domestic machinery," sewing machines, to illustrate, are in very general use, even among poor people, and it may well be that they and the established method of selling them, by house to house canvass, with the privilege of making payment in installments, to which the people had become accustomed and attached, were responsible for the exemption of peddlers of domestic machinery from the obligation to obtain licenses. We can not think, however, that it was the legislative intent to extend immunity beyond what might be termed housekeeping machinery. If vehicles kept for the use of the family in riding for business, pleasure or health, may be sold by itinerant vendors, the same would almost of necessity be true of farm wagons, mowing machines, harvesting machines, and the like, which are broadly speaking, domestic machinery, and some of which are quite as essential to the well-being of the family as vehicles for travel. It can hardly be that the legislature intended to deprive the established dealers in so large and important a class of merchandise, by the statute of 1903, amending that of 1901, of the protection, which up to that time, they had against itinerant competition, or to cut off the

revenue which would naturally be derived from licenses for the sale of such articles.

It is further urged by the defendant that the law in question is in violation of that provision of the constitution of the United States which gives Congress the exclusive right to regulate commerce among the several states, and by inference at least that it is class legislation contrary to the fourteenth amendment of the Constitution, in that it forbids sales to those who are not dealers. The validity of such legislation as that under consideration is recognized in Emert v. Missouri, 156 U. S., 196; See also Kehrer v. Stewart, 197, U. S. 60. The principles on which the decision rests are there exhaustively considered, and the decisions based on them are summarized. The question cannot be treated by this court as an open one in any of its aspects.

Judgment affirmed.

William J. Mills, C. J., Frank W. Parker, A. J., Edward A. Mann, A. J., Wm. H. Pope, A. J., concur.

McFie, A. J., having heard the case below did not participate.