ELLIS, Justice Ad Hoc *.
Norman Pearaa was charged by information with three counts of violation of the “endless chain statute,” R.S. 51:361, 362 and 371, by conducting “a system of merchandising slots on a pyramid board by means of an endless chain without having first obtained a permit in writing from the Louisiana Securities Commission.” Defendant filed a motion to quash, based on a number of grounds, which was denied. Thereafter, defendant withdrew his plea of not guilty, and entered a plea of guilty to counts two and three of the information, reserving his right to appeal the adverse ruling on his motion to quash. Count one was dismissed for lack of venue. After sentence was imposed, defendant appealed.
The motion to quash was heard on the following stipulation of fact:
“On May 22, 1980 Norman Pearah, along with other persons, conducted a meeting at Roger’s Auto Parts in Livingston Parish at which a pyramid scheme was initia *1196 ted and subsequently transported into East Baton Rouge Parish for further propagation. Under this scheme a board was constructed in the form of a board attached to this stipulation. Fifteen were drawn, one through sixteen, excluded the number two, and the persons whose names appear on the board designated S-l, attached hereto, drew the respected numbers and each put up a thousand dollars, with the exception of the person who drew number 1, and paid five hundred ($500.00) dollars to the person immediately above them and five hundred ($500.00) dollars to the person at the top of the board. The number 2 spot, containing the initials PRS, was reserved for Norman Pearah, Charles Rogers, and Kevin Smith. Additionally, Norman Pearah put up the money for the spot filled by the name Richard Rosen, since Richard Rosen was not actually present at the meeting, and shared on a fifty-fifty bases the proceeds from the spot occupied by Kelly Sharp. Thereafter meetings were held at Faul’s Automotive Repair on Madeleine Court in East Baton Rouge Parish for the purpose of promoting this pyramid to sell additional spots on the lower rows as designated on S-l, attached hereto. At each of these meetings Norman Pearah was one of the principal speakers, explaining and promoting this concept with a view toward reaping financial benefits from it. As a result of his participation in these boards, Norman Pearah and his wife received at least fifty eight thousand dollars. When this board was filled completely, it split into four boards along the heavy vertical lines on S-l. Thereafter Jackie Pearah was at the top of two boards, with Richard Rosen being in the number 2 spot on one board and Norman Pearah being in the number 2 spot on the other board. Norman Pearah conducted the meetings for these boards, since Richard Rosen never came to Baton Rouge, and Norman Pearah actually received the financial proceeds from that slot.
“Each of the persons on the board was expected and encouraged to induce and entice other persons to put up a thousand dollars in order to get on this board. This scheme operates as an endless chain, since an order for the new people who come in to get the sixteen thousand dollars that the board promises to pay they must bring in, continually, additional people, and as more people are brought in it becomes necessary for a geometrically greater number of people to be brought in for each person to get his sixteen thousand dollars. It is impossible for every person to get sixteen thousand dollars without some people losing money.”
R.S. 51:361 provides as follows:
“As used in this Sub-part:
“ ‘Endless chain’ means any plan or scheme wherein any person sells, transfers, assigns, or issues to any person any right, property, ticket, coupon, certificate, contract, or other token, and wherein the purchaser, transferee or assignee thereof or the person to whom the same is issued undertakes or is required or is permitted to undertake for himself, or as the agent, representative, or attorney of such person to sell, transfer, assign, or issue to another any right, property, ticket, coupon, certificate, contract or other token which may under certain conditions entitle the purchaser or recipient thereof to any right, property, ticket, coupon, certificate, contract, or other token and wherein the purchasers, transferees or assignees thereof from the original purchasers, assignees, or transferees, or from subsequent purchasers, assignees, or transferees, are also given as a consideration for their entry into or participation in such plan or scheme and their purchase or receipt of such right, property, ticket, coupon, certificate, contract or other token, the right, privilege or obligation of making further sales, assignments, or transfers of any right, property, ticket, coupon, certificate, contract or other token.
“ ‘Dealer’ means each person carrying on and conducting any system of merchandising by means of an endless chain as a principal.
*1197 “ ‘Agent’ means every person engaged in the sale, transfer, issuing or assignment of any right, property, ticket, coupon, certificate, contract, or other token in connection with any system of merchandising by means of an endless chain otherwise than as a principal.
“ ‘Commission’ means the Louisiana Securities Commission.”
R.S. 51:362 provides as follows:
“No dealer or agent shall operate, conduct or carry on, or cause to be operated, conducted or carried on in Louisiana any system of merchandising by means of an endless chain without having first obtained from the commission a permit in writing authorizing the dealer or agent to do so.”
In this court, defendant makes two assignments of error. First, he argues that R.S. 51:361 and 362 are unconstitutional because they are overbroad. Second, he argues that the statutes are unconstitutionally vague.

ASSIGNMENT OF ERROR NO.l

Defendant contends that R.S. 51:361 and 362 are unconstitutional because they are overly board. As noted in State v. Cannon, 383 So.2d 389, 394 (La.1980), the overbreadth consideration “applies to statutory language which, though not vague, encompasses protected as well as unprotected conduct. Activities subject to state regulation may not be governed by unnecessarily broad means which invade protected freedoms.” NAACP v. Alabama ex rel. Flowers, 377 U.S. 288, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964). We find no merit in the argument. It cannot be forcefully contended that the application of these statutes goes beyond the regulation of fraudulent conduct. The purpose of the licensing of such endeavors is to protect the public from irresponsible or fraudulent conduct on the part of those operating “endless chain businesses, and it does not purport to regulate other activities.” Defendant’s examples of such activities are not apposite.

ASSIGNMENT OF ERROR NO. 2

Defendant next contends that R.S. 51:362 is unconstitutionally vague. In State v. Cannon, supra, we said:
“A statute is unconstitutionally vague if men of common intelligence must guess as to its meaning. Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). To meet due process requirements, the language of the statute must give adequate warning of the conduct proscribed and must also provide standards to enable judges and juries to fairly administer the law. Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1951). “In State v. Dousay, 378 So.2d 414 (La., 1979) the court stated:
‘With regard to the requirement of adequate notice, this court has held that the constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that a penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. . . . The due process clause of the Louisiana Constitution has also been found to demand that words and phrases employed in statutes or regulations may not be so vague and indefinite that any penalty prescribed for their violation constitutes the taking of liberty or property without due process of law.... Similarly, a conviction under a criminal enactment which does not give adequate notice that the conduct charged is prohibited is violative of the due process clause of the Fourteenth Amendment of the United States Constitution. . . . (Citations omitted)
‘Both the constitutional guarantees of procedural due process and the right to a fair trial embodied in Article 1, § 16 of the Louisiana Constitution also require that a criminal enactment contain an ascertainable standard of guilt and that it “mark[s] boundaries sufficiently *1198 distinct for judges and juries to administer the law in accordance with the legislative will.” City of Baton Rouge v. Norman, 290 So.2d 865, 868 (La., 1974). The United States Supreme Court has held that “[a] law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it .. . leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.” Giaccio v. Pennsylvania, 382 U.S. 399, 403, 86 S.Ct. 518, 520-521, 15 L.Ed.2d 447, 450 (1965). The constitutional requirement of definiteness is satisfied when the language of a criminal enactment “has a generally accepted meaning such that a person of ordinary intelligence would be given fair notice of what conduct is forbidden.” State v. Defrances, 351 So.2d 133, 135 (La., 1977) or when “the crucial words [or] phrases in the criminal statute have a fixed and definite meaning for a person of ordinary intelligence.” State v. Cloud, 248 La. 125, 130, 176 So.2d 620, 622 (1965).’ 378 So.2d 416-417.”
In the instant case, defendant argues that the term “system of merchandising” is without well-defined meaning and that the definition of “endless chain” provided by La.R.S. 51:361 is “completely undecipherable.”
Stripped of language not applicable here, La.R.S. 51:361 defines an endless chain as:
“Any plan or scheme wherein any person sells ... to any [other] person any . .. contract . . ., and wherein the purchaser ... is permitted to . .. sell ... to another any . . . contract . . . which may under certain conditions entitle the purchaser ... to any . . . property . . . and wherein the purchasers . . . thereof from the original purchasers ... are also given as a consideration for their entry into . . . SUch plan or scheme .. . the right ... of making further sales .. .. ”
Though admittedly lacking clarity, this provision defines a chain distributor scheme as a sales device whereby a person making an investment is granted a license to recruit for profit one or more persons who are in turn also granted such a license to recruit.
We find, therefore, that R.S. 51:361 is not unconstitutionally vague, but that it adequately apprises the general public of the nature of an “endless chain” system of merchandising.
Webster’s Third New International Dictionary defines merchandising as “sales promotion as a comprehensive function including market research, development of new products, coordination of manufacture and marketing, and effective advertising and selling.” R.S. 51:361 includes both tangibles and intangibles as possible subjects of the system of merchandising. We find nothing vague about the use of that term as used in R.S. 51:362, but rather, that it has a clear and well-defined meaning. We find no merit in this assignment of error.
The conviction and sentence are therefore affirmed.
LEMMON and CALOGERO, JJ., concur and assigns reasons.
DENNIS, J., dissents with reasons.

 Judges Ellis, Lottinger, and Ponder of the Court of Appeal, First Circuit, participated in this decision as associate justices ad hoc, joined by Associate Justices Calogero, Dennis, Watson, and Lemmon.