741 P.2d 435

**STATE of New Mexico, ex rel. Hal STRATTON,[1] Attorney General, Plaintiff-Appellee,**

v.

**Kenneth D. SINKS, Jr., d/b/a "Rocky Mountain Traders Future Millionaires Society," Defendant-Appellant.**

**No. 9109.**

Court of Appeals of New Mexico.

July 2, 1987.

---

**1.** Suit was filed by Paul Bardacke, Attorney General at the time. We have substituted Hal Stratton, the current Attorney General, pursuant to SCRA 1986, 12–301(D).

Hal Stratton, Atty. Gen., Arthur G. Olona, Stuart Bluestone, and Frank D. Weissbarth, Asst. Attys. Gen., Santa Fe, for plaintiff-appellee.

Kenneth D. Sinks, Jr., pro se.

## OPINION

GARCIA, Judge.

Defendant appeals from a judgment rendered against him for injunctive relief, restitution and civil penalties under the Pyramid or Multilevel Sales Act (Act), NMSA 1978, Sections 57–13–1 to –18 and the Unfair Practices Act, NMSA 1978, Sections 57–12–1 to –20. Defendant raises numerous issues on appeal. We discuss: (1) whether the Act violates defendant's first amendment rights of freedom of expression, association and assembly; (2) whether the Act is unconstitutionally vague or overbroad; (3) whether jurisdiction was proper in this case; and (4) whether defendant's right of trial by jury was infringed. We have considered defendant's other issues and, finding them to be frivolous and without merit, decline to discuss them. We affirm.

### FACTS

The State of New Mexico, through the Attorney General, instituted a civil suit under the Pyramid or Multilevel Sales Act and the Unfair Practices Act against defendant. The trial court issued a temporary restraining order and, later, a preliminary injunction, enjoining defendant from

operating the Rocky Mountain Traders Future Millionaires Society.

Defendant first began soliciting membership into Rocky Mountain Traders sometime in 1983, both within and outside the State of New Mexico. As described in defendant's flyer, the total cost of joining Rocky Mountain Traders was $15. Of that amount, $5 went to defendant, $5 went to a so-called "Society Director" (the member's immediate sponsor) and $5 went to the purchase of a "handbook" (a one-page leaflet).

Each new member received three membership flyers and three registration forms with his name listed in the last, or No. 9 position. He was then instructed to solicit three new members and to assist them in doing the same. Once he sponsored three new members, his name was to move up the list to the No. 8 position. The more new members sponsored, the sooner he would move up the chain to the No. 1 position. For each new member sponsored, people were advised they would receive $5, and that by the time their name moved up to the No. 1 position (actually 29,523 new members later), they would have earned a "guaranteed" $98,415. By this time, defendant, who was the beneficiary of $5 for every new member sponsored, would have earned at least $147,615.

The jury in this case determined that Rocky Mountain Traders was a pyramid chain letter. While it was sold under the guise of being a multilevel sales program, no product was ever sold and no goods were ever placed in the stream of commerce. To the contrary, the entire "sales program" was dependent upon recruitment of fee-paying members who, in turn, would recruit other members.

The New Mexico Pyramid or Multilevel Sales Act requires each pyramid or multilevel sales company doing business in New Mexico to file initial and quarterly registration statements with the attorney general. See § 57–13–10. Defendant neither filed nor registered. After notification of the registration requirement by the attorney general's office, defendant attempted to register Rocky Mountain Traders as a multilevel sales company. Defendant was informed that Rocky Mountain Traders' proposed marketing program violated numerous provisions of New Mexico law, that it did not meet the statutory and regulatory requirements for registration as a pyramid or multilevel sales company and that any continued operation would constitute a willful violation of the Act.

Defendant continued to promote Rocky Mountain Traders and suit was instituted accordingly. The trial judge directed a verdict against defendant, finding that as of February 2, 1984, defendant was doing business in New Mexico in violation of the Act. The jury returned verdicts to special interrogatories finding that defendant was in violation of the Pyramid or Multilevel Sales Act and the Unfair Practices Act. The jury found that defendant was soliciting memberships and doing business in New Mexico subsequent to February 1984 and up to the trial date.

**DISCUSSION**

**WHETHER DEFENDANT'S FIRST AMENDMENT RIGHTS OF FREEDOM OF EXPRESSION, ASSOCIATION AND ASSEMBLY WERE INFRINGED**

■ First, defendant contends that the judgment against him violates rights of expression and assembly. He raises this argument on behalf of the members of Rocky Mountain Traders and himself, individually. Defendant is not entitled to raise issues on behalf of members of Rocky Mountain Traders. He has no standing as an ordinary litigant to assert the constitutional rights of third-parties. *See Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). *See State v. Casteneda,* 97 N.M. 670, 642 P.2d 1129 (Ct.App. 1982).

■ As to defendant's own first amendment rights, any incidental impact on communication that results from the state's action against deceptive trade practices is not unconstitutional. *See General Stores, Inc. v. Bingaman,* 695 F.2d 502 (10th Cir.1982); *Weiler v. Carpenter,* 695 F.2d 1348 (10th Cir.1982). New Mexico's Pyramid or Multilevel Sales Act pursues

the legitimate state interest of preventing deceptive practices. Defendant's constitutionally protected speech is unfettered. In *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502, 69 S.Ct. 684, 691, 93 L.Ed. 834 (1949), the Supreme Court explained that: "[I]t has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *See State v. Lycett*, 133 Ariz. 185, 650 P.2d 487 (App.1982) (anti-pyramid statute does not encroach on constitutionally protected speech).

■ Likewise, defendant's right of association is not infringed by the Act. Defendant is free to contact or associate with any member of Rocky Mountain Traders; he is only enjoined from the further marketing of the pyramid scheme.

■ Furthermore, we note that the marketing of Rocky Mountain Traders constitutes commercial speech. While commercial speech is not excluded from first amendment considerations, it deserves a smaller degree of protection than noncommercial speech. *See Friedman v. Rogers*, 440 U.S. 1, 99 S.Ct. 887, 59 L.Ed.2d 100 (1979); *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). Consequently, the prohibition against prior restraint does not apply to commercial speech since it is less likely to be inhibited by regulation. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). In *Virginia State Bd. of Pharmacy*, the Supreme Court stated:

> Obviously, much commercial speech is not provably false, or even wholly false, but only deceptive or misleading. We foresee no obstacle to a State's dealing effectively with this problem. The First Amendment, as we construe it today, does not prohibit the State from insuring that the stream of commercial information flow cleanly as well as freely.

*Id.* at 771–72, 96 S.Ct. at 1830 (footnote omitted). *See also Friedman v. Rogers;*

*Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

■ While legislative approaches to the regulation of pyramid schemes have varied, courts in other jurisdictions have uniformly upheld statutes governing pyramid or multilevel sales regulation. *See, e.g., State v. Lycett; People ex rel. Fahner v. Walsh*, 122 Ill.App.3d 481, 77 Ill.Dec. 691, 461 N.E.2d 78 (1984); *Kugler v. Koscot Interplanetary, Inc.*, 120 N.J.Super. 216, 293 A.2d 682 (1972); *State by Lefkowitz v. ITM, Inc.*, 52 Misc.2d 39, 275 N.Y.S.2d 303 (1966). *See also In re Holiday Magic, Inc.*, 84 F.T.C. 748 (Oct. 15, 1974). In considering the welfare of its citizens, the state has good reason to look with disfavor and suspicion upon pyramid schemes such as the one in this case. Participants in pyramid sales are essentially being sold the right to sell new memberships in the pyramid. The investors make money not through the sale of the product, but through engaging others to invest in the scheme. The mathematical reality is that only early participants recoup their investment.

Under the pyramid scheme of Rocky Mountain Traders, the number of paying participants on the chart must be constantly tripled in order for a person to recover his or her original investment. Initial participants make no money until thousands of other people are recruited. For one person to make $98,415, which defendant's literature "guarantees", 19,683 recruits are needed at the bottom or ninth level. The entire pyramid at that time would have to consist of 29,523 people. According to the last New Mexico census, the population in the county where defendant resided while he promoted his "instant riches" scheme was 80,833. If defendant's theoretical pyramid continued beyond the ninth level, it would exceed the population of the entire United States by the eighteenth level.

In justifying its state's prohibition against pyramid sales, the New York Supreme Court noted:

> " . . . The chain distributor scheme is an improvident promotion designed to lure persons in the lower income brackets, the

young, the gullible, the unemployed or other persons in desperate need of a source of income into believing that through the magic of the chain distributor scheme, they can become one of the top 2 or 3% of the money earners in this country. Such representations usually result in a total financial loss to a person joining the chain distributor scheme. However, because the people to whom this approach is made often are easily led to believe that by such fanciful ventures they can escape their current predicaments it is imperative that legislation prohibiting such schemes be enacted as soon as possible to remove such schemes that prey on the unwary."

*People v. Life Science Church,* 113 Misc.2d 952, 450 N.Y.S.2d 664, 672 (1982) (quoting legislation history, N.Y.Gen.Bus.Law § 359fff (McKinney)). The legislature is authorized to protect the general welfare of its citizens, and the primary obligation of the state is to protect the safety and welfare of the public. *See In re McCain,* 84 N.M. 657, 506 P.2d 1204 (1973). Given the potentially deceptive nature of pyramids, we hold that there is a valid state interest in their regulation, and any infringement on first amendment rights is both negligible and subordinate.

## WHETHER THE ACT IS UNCONSTITUTIONALLY VAGUE OR OVERBROAD

■ Defendant next urges that the Pyramid or Multilevel Sales Act is unconstitutionally vague and overbroad. We do not agree. A statute is unconstitutionally vague only if people of common intelligence must guess as to its meaning. *Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926); *In re Doe,* 100 N.M. 92, 666 P.2d 771 (1983); *State v. Casteneda.* The language of the statute must give adequate warning of the conduct proscribed and must provide standards to enable judges and juries to administer the law fairly. *See Boyce Motor Lines, Inc. v. United States,* 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367 (1952). "[C]ourts must indulge in every presumption in favor of the validity of the legislation." *Drink,*

*Inc. v. Babcock,* 77 N.M. 277, 280, 421 P.2d 798, 800 (1966).

■ We find nothing impermissibly vague about the New Mexico Pyramid or Multilevel Sales Act. It clearly specifies what is required to register a pyramid or multilevel company in this state. Section 57–13–10 requires registration with the attorney general, and Section 57–13–3 enumerates exactly what features and consumer protections the marketing plan must contain. Defendant's plan was rejected on two occasions because Rocky Mountain Traders was nothing more than an illegal chain letter, with neither a product to sell nor any intention of selling anything more than a fanciful dream.

■ Moreover, the New Mexico statute is narrowly drawn. It recognizes that under certain conditions, multilevels may operate in a legitimate fashion. All multilevels are not considered per se deceptive and unlawful. *See* § 57–13–3. The Act requires pyramid operations to meet minimum guidelines to insure that only legitimate multilevel distribution plans are approved. The Act also appoints the attorney general to oversee these programs, allowing legitimate commerce and businesses to exist with some supervisory oversight from the attorney general. The power of the state to provide for the general welfare of its people authorizes it to prescribe such regulations as are reasonably calculated to secure the public from deception and fraud, so long as the regulations bear a valid relationship to the evil sought to be prohibited. *State v. Collins,* 61 N.M. 184, 297 P.2d 325 (1956).

■ Under the same reasoning, we are unpersuaded by defendant's argument that the Act operates as an unconstitutional restraint of trade. It is within the state's police power to license and regulate business. *See Territory v. Russell,* 13 N.M. 558, 86 P. 551 (1906) (statute prohibiting sale by peddlers without license was not unconstitutional). A statute is sustainable as a proper exercise of police power if it is reasonably necessary to prevent manifest evil or reasonably necessary to protect

the public safety or general welfare. *Alber v. Nolle*, 98 N.M. 100, 645 P.2d 456 (Ct.App.1982); *State v. Dennis*, 80 N.M. 262, 454 P.2d 276 (Ct.App.1969). In deciding that Louisiana's pyramid statute's licensing requirement was not an unconstitutional restraint of trade, the Louisiana Supreme Court stated:

It cannot be forcefully contended that the application of these statutes goes beyond the regulation of fraudulent conduct. The purpose of the licensing of such endeavors is to protect the public from irresponsible or fraudulent conduct on the part of those operating "endless chain businesses, and it does not purport to regulate other activities."

*State v. Pearaa*, 403 So.2d 1194, 1197 (La. 1981). The New Mexico Pyramid or Multilevel Sales Act serves the same purpose.

The right of a citizen under our constitution to follow any legitimate business, occupation, or calling, as a means of livelihood, is fully secured. It is subordinate, however, to the state's right to impose any reasonable regulation that the public welfare may require. *State v. Spears*, 57 N.M. 400, 259 P.2d 356 (1953). Because of the potentially fraudulent nature of pyramid schemes, we hold that the statute in question is a reasonable exercise of the state's police power. A determination of what is reasonably necessary for the preservation of the health, safety and welfare of the general public is a legislative function and will not be interfered with absent a clear abuse. *Ferguson v. New Mexico State Hwy. Comm'n*, 99 N.M. 194, 656 P.2d 244 (Ct.App.1982).

## JURISDICTION

Defendant sought to evade the provisions of the Act by ceasing to accept New Mexico memberships, while continuing to solicit out-of-state residents. He maintains that because he allegedly ceased soliciting members from New Mexico and no longer operated Rocky Mountain Traders in New Mexico, the district court had no jurisdiction against him. In an attempt to achieve this end, defendant opened a mail drop in Durango, Colorado, and changed his flyers to reflect the Durango address. He contends that by maintaining a Durango mail drop, he was not "doing business in this state." *See* § 57–13–10(A). Defendant's argument lacks merit.

Since defendant is a New Mexico resident and was properly served, there is no issue concerning personal jurisdiction over him. Additionally, the district court had express statutory authority to hear the case. Section 57–13–4(A) provides that an

action may be brought in the district court of the county in which the person resides or has his principal place of business or in the district court in the county in which the person is using, has used or is about to use the practice which has been alleged to be unlawful * * *.

The district court also had subject-matter jurisdiction. *See id.* We agree with the state that defendant's "doing business" argument is therefore not strictly jurisdictional, but, rather, a challenge to the factual findings in the case regarding defendant's operations in New Mexico.

There was testimony at trial that defendant first ordered the printing of the flyers and brochures in July 1983. The initial flyer contained a Farmington address. Subsequent flyers contained an Auburn and an Apache Street address in Farmington. The Auburn and Apache Street addresses were private mail boxes rented out by defendant. In June 1984, after defendant was instructed by the attorney general's office to cease solicitation, defendant rented a post office box in Farmington and received mail addressed to Rocky Mountain Traders there. He continued to receive mail addressed to Rocky Mountain Traders at that box until June 1985. Obviously, this evidence conflicted with defendant's testimony that he ceased operating in New Mexico in February 1984. The Farmington postmistress testified that from June 1984, to June 1985, defendant received approximately 20 to 25 letters a week addressed to Rocky Mountain Traders. Further, subsequent to February 1984, the evidence reflects that defendant continued to operate Rocky Mountain Traders. He picked up the mail at his mail drop

**220**

in Durango and returned to his home in Farmington to process it. Defendant admitted he was still operating Rocky Mountain Traders as of the trial date and had not filed with the attorney general's office. This testimony and evidence provides substantial support for the judgment rendered against defendant. Where findings of fact are supported by substantial evidence, the refusal of the trier-of-fact to make contrary findings is not error. *Griego v. Wilson*, 91 N.M. 74, 570 P.2d 612 (Ct.App.1977).

## WHETHER RIGHT OF TRIAL BY JURY WAS INFRINGED

Defendant also contends that his right to trial by jury was infringed by the trial court's granting of a partial directed verdict against him and the court's rejection of requested jury instructions, including requested special interrogatories to the jury.

▮ Both the Unfair Trade Practices Act, and the Pyramid or Multilevel Sales Act, provide for special statutory remedies in addition to other remedies existing at common-law. *See* §§ 57–12–10; 57–13–6. Generally, where the remedy sought is legal, the parties are entitled to a jury trial, but if the remedy sought is equitable, there is no jury trial as of right. *Evans Financial Corp. v. Strasser*, 99 N.M. 788, 664 P.2d 986 (1983); *see also Reece v. Montano*, 48 N.M. 1, 144 P.2d 461 (1943). Under the complaint filed by the state, plaintiff sought both the imposition of civil penalties and injunctive relief. The judgment entered by the trial court ordered injunctive relief, restitution and payment of a civil penalty in the amount of $10,000.

▮ We find no merit in defendant's argument. The record indicates that the trial court granted defendant a jury trial. The record further supports the trial court's granting of a directed verdict on the issue of liability. Our review of the record indicates defendant failed to file an answer to the complaint filed by the state. Defendant did file a document entitled "Declaration of Status," and challenged the jurisdiction of the court and the constitutionality of the Pyramid or Multilevel Sales Act. However, neither of these doc-

uments, nor any other pleading filed by defendant, constituted a timely answer and denial of the allegations in the state's complaint. Failure of a party to expressly deny allegations in a complaint constitute an admission of the matters alleged. *See Bank of New Mexico v. Pinion*, 57 N.M. 428, 259 P.2d 791 (1953). *Cf. In re One Cessna Aircraft, Etc.*, 90 N.M. 40, 559 P.2d 417 (1977). Where the evidence and reasonable inferences to be drawn therefrom are plain and not open to doubt by reasonable men, there is no issue of fact to be presented to the jury. *See Williamson v. Piggly-Wiggly Shop Rite Foods, Inc.*, 80 N.M. 591, 458 P.2d 843 (Ct.App.1969); *see also Westbrook v. Lea General Hospital*, 85 N.M. 191, 510 P.2d 515 (Ct.App.1973). Under the facts presented here, we find no error in the trial court's order granting a partial directed verdict and its denial of defendant's requested special interrogatories.

## CONCLUSION

In sum, we hold that the Pyramid or Multilevel Sales Act did not unconstitutionally infringe upon defendant's first amendment rights nor is the Act unconstitutionally vague or overbroad. The district court had jurisdiction over the defendant and this matter, and both the trial court's partial directed verdict and the jury's verdict were supported by substantial evidence. The other issues and subissues raised by defendant were considered by this court and rejected.

IT IS SO ORDERED.

DONNELLY, C.J., and BIVINS, J., concur.