SHORTESS, Judge.
In this action brought by the State, James Phipps, d/b/a Paymaster Profit Systems/Mul-ti-Fax (defendant), appeals the judgment of the trial court permanently enjoining “defendant, JAMES PHIPPS D/B/A PAYMASTER PROFIT SYSTEMS/MULTI-FAX, his agents, employees, or those persons acting on his behalf or on behalf of PAYMASTER or in concert with JAMES PHIPPS or PAYMASTER PROFIT SYSTEMS/MUL-TI-FAX ... from engaging in the promotion, solicitation and/or sale of the PAYMASTER PROFIT SYSTEMS/MULTI-FAX scheme in Louisiana....”
A. The Facts
For $179.00, an individual may purchase an “informational kit” from a “success consultant” or “sponsor.”[1] Defendant, who produces the materials, receives $79.00 and the sponsor receives a $100.00 “commission.” The materials outline how the Paymaster Profit Systems/Multi-Fax plan (Paymaster plan) operates and how one may participate. The $100.00 payment places the individual at the bottom of a payment chain. To maintain a place in the chain, an individual pays up-line sponsors a total of $1,000.00 per month. The first sponsor always receives $100.00 on or about the anniversary date of the initial sale each month. The second up-line sponsor receives $200.00 fourteen days later, the third up-line sponsor receives $300.00 fourteen days after the second payment, and the fourth up-line sponsor receives $400.00 fourteen days after the third payment.[2] Individuals who do not maintain their payments are removed from the network, which is maintained by defendant who issues an updated computer readout of the network every fifteen days.
The trial court found a $100.00 commission on a $79.00 sale was a “subterfuge,” rather than a valid commission. The court further found the Paymaster plan was an illegal pyramid scheme because it was a chain distributor system in violation of the Unfair Trade Practices Act.
■Defendant does not deny the mechanics of his program. Instead, he contends the trial court erred in finding the plan was a chain distributor scheme. He further contends the trial court erred in granting the injunction because the State failed to prove he was using, used, or was about to use any method, act, or practice declared unlawful by Louisiana unfair trade practices and consumer protection laws and regulations. He alternatively contends if his activities in connection with the Paymaster plan are prohibited by state law, the laws unconstitutionally curtail his rights of free speech, association, and expression.
B. The Trial Court Findings
If there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 883 (La.1993). In this case, the trial court examined the evidence, heard the testimony, and made a factual finding that the “commission” was a subterfuge. The court also found as a fact that the Paymaster system was an illegal chain distributor system.
A “Chain Distributor Scheme,” as defined by the Governor’s Consumer Protection Division Rules and Regulations, Title 3, Chapter II, Section 5001(A)(2), is
a sales device whereby a person, upon a condition that he make an investment, is granted a license or right to recruit for profit one or more additional persons who also are granted such license or right upon condition of making an investment' and may further perpetuate the chain of persons who are granted such license or right upon such condition. A limitation as to the number of persons who may participate, or the presence of additional conditions affecting eligibility for the above license or right to recruit or the receipt of profits *53 therefrom, does not change the identity of the scheme as a chain distributor scheme.
Not all pyramid-type or network marketing plans are illegal.[3] The State defines and regulates legal and illegal pyramid schemes, chain distributor schemes, and mul-ti-level distribution plans.[4] As a matter of law under Section 5001, any chain distributor scheme is per se an unfair and deceptive trade practice, in violation of Louisiana Revised Statute 5L1405.[5]
Upon learning of the Paymaster plan, the State requested that defendant fill out a standard “Pyramid Sales Marketing Scheme Registration Form,” which is required for the State to define the nature, therefore the legality, of such a business. Defendant altered the title of the form to “Sales Marketing Registration Form” and stated:
We are not selling a Business Opportunity. We are selling a $179.00 Financial awareness course.
[[Image here]]
Our course is a DIRECT SALE not M.L.M. Our program does not fit within the criteria of being legally defined by your statutes therefore I cannot register my business under these statutes without stating my objections to your classification of my business. I comply with all laws of all states.
On the basis of his objection to this classification, defendant refused to provide certain information requested by the State in order to be registered as a valid multi-level network business. The State also requested defendant execute a voluntary compliance form, which he never did.
Defendant was not the proper party to determine whether his business did or did not fit the statutory definition of a multi-level network marketing program. The State makes that determination after examining the structure of the business. Defendant’s own actions prevented the State from determining the legality of the plan and properly monitoring and regulating defendant’s activities according to state law. Thus, the State was forced to bring this action to prevent defendant from operating the Paymaster plan in this state.
Defendant argues he is not connected with the chain distributor scheme because he is not a “sponsor.” He argues his only connection to the scheme is the $79.00 sale of “educational” material. The central object of material distributed by Phipps, however, concerns how to participate in the “program” and profit from it.[6] Phipps admits he maintains, updates, and issues the computer lists of up-line and down-line sponsors. In his promotional tapes, he repeatedly refers to the plan as “his” program. He further admits he has a direct financial interest in perpetuating the scheme because he makes a $79.00 profit each time a new individual joins *54 the chain.[7]
The record shows one cannot purchase the materials for $79.00 without paying an additional $100.00 to the sponsor, which in turn places the buyer in the network at the bottom. It is entirely possible to participate in the plan by dutifully paying the up-line sponsors, without buying or selling anything at all after the initial $179.00. In fact, according to the “consultant manual” outlining the plan, the only requirement to maintain one’s position in the chain of sponsors is that the individual continue to pay his $1,000.00 monthly up-line obligation. To profit, however, a participant would be required to bring new individuals into the chain, who would then bring new individuals in, and so on and so forth, indefinitely perpetuating the chain and moving sponsors up-line.
Certainly the evidence supports the trial court’s view of the facts. The trial court was not clearly wrong as a matter of fact or law in determining that the $100.00 “commission” was a sham and that the Paymaster plan is an illegal chain distributor scheme. The trial court, therefore, did not err in granting the State injunctive relief against a practice deemed unlawful by the unfair trade practice and consumer protection laws and regulations.
C. Constitutionality
Defendant alternatively argues that if this court finds his activities in connection with the Paymaster plan are prohibited by state consumer laws and regulations, then the trial court erred in failing to invalidate them on the ground they unconstitutionally curtail his rights of free speech, association, and expression.
The constitutionality of the unfair trade practice and consumer protection laws was not raised at the trial court level, but was raised for the first time on appeal, so we decline to consider the merits of these issues. State v. Madere, 352 So.2d 666 (La.1977); Jordan v. Intercontinental Bulktank Corp., 621 So.2d 1141 (La.App. 1st Cir.), writs denied, 623 So.2d 1335, 1336 (La.1993).
Furthermore, defendant does not attack the constitutionality of particularized statutes. He attacks any and all laws which “unconstitutionally curtail his rights of free speech, association and expression.”
The purpose of licensing pyramid-type endeavors is to protect the public from irresponsible or fraudulent conduct on the part of those operating “endless chain businesses.” State v. Pearaa, 403 So.2d 1194, 1197 (La.1981). The regulation of fraudulent conduct is a valid exercise of state police power, and defendant has failed to show how any particular law goes beyond that power and abridges his rights.
For the foregoing reasons, the judgment of the trial court is affirmed, and costs of this appeal are assessed to defendant.
AFFIRMED.

. The materials outlining the Paymaster system refer to the individuals in the network as “sponsors/' "success consultants,” and "consultants.” These individuals are hereinafter referred to as "sponsors.”

. The payments are made over a six week cycle. As a result, payment of the first sponsor is due again before the previous pay cycle is completed.

. Multi-level marketing is a way of retailing in which consumer products are sold by independent distributors, whose compensation includes a percentage of sales of an entire sales group, as well as earnings on one's own sales. Some pyramid promoters disguise their schemes to look like legitimate multi-level marketing methods by taking on a line of products and claiming to be in business selling to consumers. Pyramid schemes are not concerned with sales to end users of the products. Profits are made by bringing in new recruits in a continuous cycle. See State's Exhibit 7, "PYRAMID SCHEMES: NOT WHAT THEY SEEM!” Pamphlet, Direct Selling Education Foundation, 1991.

. Companies such as Amway and Mary Kay Cosmetics are legitimate, multi-level marketing organizations which are licensed and permitted by the State once they have met certain requirements. See Governor's Consumer Protection Division Rules and Regulations, Title 3, Chapter II, Section 5002(B)(2).

. The Unfair Trade Practices and Consumer Protection Law, Revised Statute 51:1401-1418, declares unlawful unfair or deceptive acts or practices and provides for injunctive relief. The law also provides for other relief and provides a private cause of action.

. Defendant claims his materials do not deal exclusively with the Paymaster plan and provide useful educational information about multi-level marketing in general, self-help, motivation, attitude, teamwork, and religion. This information, however, is focused on "working the program.” In one of the tapes explaining the program, defendant specifically states that the difference between his motivational material and other motivational programs is that he provides the Paymaster program as a "vehicle” to put what he teaches into action.

. Defendant additionally profits from other materials he sells to individuals participating in the network, such as computer programs. He also offers, exclusively to network participants, an opportunity to participate in his "Unitary Debt Elimination Plan,” which apparently involves the input of capital and the promise of triple or more returns, but does not involve the sale of any product whatsoever.