1997-NMCA-050

940 P.2d 1182

**STATE of New Mexico ex rel. The DEPARTMENT OF PUBLIC SAFETY, STATE POLICE DIVISION, Plaintiff–Appellee,**

v.

**In re ONE 1986 PETERBILT TRACTOR, BLACK IN COLOR, WITH AN ALTERED VIN, Defendant–Appellant.**

No. 16829.

Court of Appeals of New Mexico.

March 11, 1997.

Certiorari Denied May 29, 1997.

Tom Udall, Attorney General, Albert Roland Fugere, Deputy Chief Counsel, Special Assistant Attorney General, Department of Public Safety, Santa Fe, for Plaintiff–Appellee.

James A. Burke, Santa Fe, for Defendant–Appellant.

## OPINION

FLORES, Judge.

1. Jose Trujillo, Jr. (Trujillo) appeals from a judgment of the district court finding that a Cummings truck engine (Engine) bearing an altered vehicle identification number was contraband and subject to forfeiture by the New Mexico State Police. Four issues are raised on appeal: (1) whether NMSA 1978, Section 66–3–507 (Repl. Pamp.1994) is a forfeiture statute to be narrowly construed against the State; (2)

whether the words "true owner" in Section 66–3–507(C)(3) can be equated with the "chain of title owner" described in Section 66–3–507(B); (3) whether the district court judgment impermissibly interferes with interstate commerce and full faith and credit among states; and (4) whether the district court lacked subject matter jurisdiction in this proceeding *in rem.* We affirm on all issues.

*FACTS*

2. The facts are undisputed. On October 27, 1994, Trujillo drove his 1986 Peterbilt tractor and refrigerated trailer into the port of entry on Interstate 10, near Anthony, New Mexico. The locking pin/slider frame was not engaged on the vehicle. As a result, personnel from the Motor Transport Division of the New Mexico Taxation and Revenue Department conducted a full safety check of the vehicle that included examining the Engine compartment. While the safety check was being conducted, Agent Rudy Ramirez observed that the Engine's VIN was missing. On further examination, he observed grind marks on the stamped Engine number that were not consistent with factory production. Thereafter, he obtained written consent from Trujillo to search the vehicle and conducted further examination and testing of the Engine. Agent Ramirez determined that the Engine number had been altered and that the number stamped on the Engine block had been ground off and stamped over. Despite the tests performed, Agent Ramirez was unable to determine the original number for the Engine. In an effort to determine the original owner, he contacted the manufacturer of the Engine, but was unable to identify the original owner. Several potential numbers for the Engine were identified, but none of them had been reported stolen. The Engine was apparently a rebuilt engine.

3. Trujillo presented a bill of sale, title documents, and insurance from the State of California evidencing that he had purchased the vehicle in California on June 1, 1992 for use in his business. No evidence was presented that Trujillo had participated in or had knowledge of the removal of the Engine's VIN tag or the alteration of the stamped Engine number. The New Mexico State Police impounded the Engine as contraband pursuant to Section 66–3–507. After a hearing, the district court ruled that Trujillo was not the "true owner" of the Engine and that the Engine was contraband and subject to being retained by the New Mexico State Police for police purposes or destroyed.

*DISCUSSION*

**I. Propriety of Seizure.**

4. Trujillo argues that the district court erred in upholding the State's right to seize the Engine from his tractor under the provisions of Section 66–3–507. He additionally argues that in reaching its decision the district court failed to narrowly construe the statute and that the court erred in finding that he was not the "true owner" of the Engine and entitled to its return.

5. Section 66–3–507(A) provides in applicable part:

Any person receiving, disposing of, offering to dispose of or having in his possession any vehicle or motor vehicle or motor vehicle engine, shall make adequate inquiry and inspection to determine that no manufacturer's serial number, engine number or other distinguishing number or mark or identification mark or number placed thereon under assignment of the division has been removed, defaced, covered, altered or destroyed.

6. Section 66–3–507(B) provides procedures for New Mexico law enforcement officials inspecting vehicle and engine VINs to impound the vehicle and/or engine and to petition a district court for a hearing to declare any vehicle or engine contraband when inspection indicates that the identification number is "removed, defaced, covered, altered or destroyed." Section 66–3–507(B) also defines an owner who is entitled to replevy the impounded vehicle and/or engine, as:

an owner who can trace his [or her] ownership of that vehicle, motor vehicle or motor vehicle engine, from the manufacturer by furnishing the court records indicating the identity of all intermediate owners.

7. Section 66–3–507(C) provides exceptions to the general rule that a vehicle and/or engine with a removed, defaced, covered, al-

tered or destroyed VIN number "shall" be declared contraband. The applicable portion of the statute in this instance is Section 66-3-507(C)(3), which reads as follows:

> Such vehicle, motor vehicle or motor vehicle engine, shall not be considered contraband when:
>
> . . .
>
> (3) it clearly appears that the true owner is in no way responsible for the altering, concealing, defacing, destroying or alteration.

8. Trujillo contends that the district court erred in determining that although he was an innocent purchaser of the Engine and was not responsible for defacing or altering the VIN, nevertheless, he was not the "true owner" of the Engine within the meaning of Section 66-3-507(C). He also argues that the district court erred in declaring the Engine contraband.

9. Statutes similar to Section 66-3-507 have been enacted in a number of states. As noted in 7A Am.Jur.2d, *Automobiles and Highway Traffic* Section 353 (1980):

> In a number of jurisdictions, statutes make the alteration, change, erasure, defacing, or mutilation of identifying numbers of motor vehicles, or the possession, sale, or offering for sale of a motor vehicle from which the manufacturer's serial number, or other identifying marks, have been removed, defaced, or altered, a criminal offense, regardless of knowledge or intent concerning such fact on the part of the possessor. Such statutes have generally been held constitutional as a valid exercise of the police power, cognizance being taken by the courts that not only is the stealing of motor vehicles an extensive criminal avocation, but that stolen vehicles are used extensively in the commission of other crimes. They do not unconstitutionally deprive a person of his liberty or property without due process of law, or deny him the equal protection of the law. But a provision purporting to authorize forfeiture or destruction of a vehicle, or engine thereof, whose identification numbers have been removed, altered, defaced, or destroyed, has been held unconstitutional in the absence of a provision requiring notice and a hearing wherein the owner could oppose the forfeiture and destruction. (Footnotes omitted.)

10. The main purpose of construing statutes is to determine the meaning and intent of the legislature. *See Roth v. Thompson*, 113 N.M. 331, 332, 825 P.2d 1241, 1242 (1992). We think the provisions of Section 66-3-507, when read together, clearly evince a legislative intent that a person in possession of a vehicle or engine must make adequate inquiry and inspection to determine that the vehicle or engine's VIN has not been altered, defaced, or destroyed. Section 66-3-507(B) provides that when a law enforcement officer finds that a vehicle or vehicle engine has an altered or removed VIN, there is a presumption that the vehicle and/or engine is contraband. The Section 66-3-507(B) procedures ensure that the declaration is by petition of the State to a court of general jurisdiction and after a hearing. Section 66-3-507(B) also requires an owner of a vehicle/engine having an altered VIN to furnish the court with records indicating the identity of all intermediate owners in order for the owner of the vehicle/engine having an altered VIN to be entitled to its return. Lastly, Section 66-3-507(C) provides exceptions to the declaration that the vehicle/engine is contraband.

11. Hence, under New Mexico law, an owner in receipt/possession of a vehicle/engine having an altered VIN has the burden to overcome a presumption that the vehicle/engine is contraband and as such subject to forfeiture to the State. An owner is not entitled to have the vehicle/engine having an altered VIN returned unless, under Section 66-3-507(B), he or she can show at the hearing before the court the identity of all intermediate owners of the vehicle and/or engine. Reading the statute as consistent among its subsections, giving effect to all of its language, and construing it as a harmonious whole, we are persuaded that the use of the words "true owner" in Section 66-3-507(C)(3) refers back to and is defined by the language in Section 66-3-507(B). *See Westgate Families v. County Clerk*, 100 N.M. 146, 148, 667 P.2d 453, 455 (1983) (noting that Supreme Court construes each part of an act

in connection with every other part so as to produce harmonious whole). That is, the "true owner" referred to in Section 66–3–507(C)(3) is the owner who can trace his title through all intermediate owners to the manufacturer. We need not look at other statutes or definitions for clarification of these words, as Trujillo urges us to do. *See Johnson v. Francke,* 105 N.M. 564, 566, 734 P.2d 804, 806 (Ct.App.1987) (where meaning of language is plain and free from ambiguity, there is no basis for interpreting statute).

12. In this case, Trujillo could not produce documents that provided evidence of his title to the Engine through its intermediate owners to the manufacturer. Thus, even though there was no evidence that Trujillo had participated in the alteration or defacement of the Engine VIN, Trujillo was not entitled to return of the Engine because he could not show he was the "true owner" as defined in Section 66–3–507(B) and as required by Section 66–3–507(C)(3).

## II. Interstate Commerce and Full Faith and Credit.

13. Trujillo contends that the forfeiture of a truck or parts of a truck on an interstate trip constitutes an unreasonable burden on interstate commerce, if in the state of its registration the vehicle would allegedly not be subject to forfeiture. Trujillo argues (1) that application of New Mexico state law upon a California truck engine violates the due process clause, U.S. Const. amend. XIV, § 1, because Trujillo relied on California state vehicle title law, is unfamiliar with New Mexico state law, and had substantial contact with the State of California and minimal contact with the State of New Mexico; and (2) that failure to give appropriate weight to a California regulation of motor vehicles domiciled and titled within California violates the full faith and credit clause, U.S. Const. art. IV, § 1. Moreover, Trujillo argues that the full faith and credit clause or the due process clause is implicated where application of a state's law would be "arbitrary or fundamentally unfair." We do not agree.

14. First, "full faith and credit is 'not an inexorable and unqualified command.'" *Jim v. CIT Fin. Servs. Corp.,* 87 N.M. 362, 363, 533 P.2d 751, 752 (1975) (quoting *Pink v. A.A.A. Highway Express, Inc.,* 314 U.S. 201, 210, 62 S.Ct. 241, 246, 86 L.Ed. 152 (1941)). This principle is especially true where, as in this case, Trujillo seeks to enforce a foreign legislative enactment or statute in this, the forum state, which need not necessarily subordinate its own statutory policy to an arguably conflicting public act of another state. *Id.*

15. Second, Section 66–3–507 is a proper exercise of New Mexico's police power. "[A] statute is sustainable as a proper exercise of [a state's police] power if the enactment is reasonably necessary to prevent manifest evil or reasonably necessary to preserve the public safety, or general welfare." *Alber v. Nolle,* 98 N.M. 100, 105, 645 P.2d 456, 461 (Ct.App.1982); *see also State ex rel. Stratton v. Sinks,* 106 N.M. 213, 218–19, 741 P.2d 435, 440–41 (Ct.App.1987). The legislature is the proper branch of government to determine what should be proscribed under the police power, and "[a] determination of what is reasonably necessary for the preservation of the health, safety and welfare of the general public is a legislative function [that] will not be interfered with absent a clear abuse." *Sinks,* 106 N.M. at 219, 741 P.2d at 441. Regulating highways comes under the states' police powers, and a state, in the exercise of its police power in the interest of the safety of the traveling public and in deterring crime, has the right to control and regulate its highways. *See Stuckey's Stores, Inc. v. O'Cheskey,* 93 N.M. 312, 320, 600 P.2d 258, 266 (1979), *appeal dismissed,* 446 U.S. 930, 100 S.Ct. 2145, 64 L.Ed.2d 783 (1980). Because of the need to protect the travelling public from the effects of crime and stolen vehicles on its highways as represented by vehicles/engines having altered or defaced VINs and the interest of preventing the theft of vehicles/engines, we hold that Section 66–3–507 is a reasonable exercise of the state's police power. *See People v. Billardello,* 319 Ill. 124, 149 N.E. 781, 781 (1925) (the prohibition against the possession of a motor vehicle having destroyed, removed, altered, covered, or defaced VIN was enacted in the exercise of the police power in the interest of the general welfare).

**16.** Property and property rights are held subject to the fair exercise of the state's police power, and reasonable regulations enacted for the benefit of the public health, convenience, safety, or general welfare are not unconstitutional. *See* 7A Am. Jur.2d, *supra* § 353; *see also Mitchell v. City of Roswell*, 45 N.M. 92, 98, 111 P.2d 41, 44 (1941) ("[A] reasonable regulation enacted for the benefit of the public health, convenience, safety or general welfare is not an unconstitutional taking of property in violation of ... the due process clause."); *Garcia v. Village of Tijeras*, 108 N.M. 116, 123, 767 P.2d 355, 362 (Ct.App.1988).

**17.** Third, we agree with the State's position that the United States Supreme Court opinion in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809, 64 U.S.L.W. 4335 (1996), does not determine the outcome of this case. In this case, we are dealing with a statutory enactment within a state's valid exercise of its police power. As previously discussed, New Mexico's regulation requiring removal from the highways of vehicles/engines having altered VINs, except where an owner can make certain showings at a hearing, is not so egregious as to violate the due process clause of the United States Constitution. We so hold. We turn now to the interstate commerce analysis.

**18.** Article I, Section 8 of the Constitution of the United States delegates to Congress the authority to regulate interstate commerce. "[S]tate action affecting interstate commerce is precluded in three types of situations: (1) where state action directly burdens interstate commerce; (2) where state action conflicts with federal regulations; and (3) where Congress has evidenced an intent to completely pre-empt the area of regulation involved." *New Mexico Bd. of Exam'rs in Optometry v. Roberts*, 70 N.M. 90, 95, 370 P.2d 811, 814 (1962), *aff'd sub nom. Head v. New Mexico Bd. of Exam'rs in Optometry*, 374 U.S. 424, 83 S.Ct. 1759, 10 L.Ed.2d 983 (1963). None of these situations is present in this case.

**19.** We first consider whether Section 66–3–507 constitutes an obstruction of or direct interference with interstate commerce in violation of the federal constitution as contended by Trujillo. In this case, we have determined that Section 66–3–507 is a valid exercise of New Mexico's police power. The statute was enacted for the purpose of the general welfare and safety of the citizens of the State of New Mexico to be free from the presence of crime by requiring law enforcement officers to remove from New Mexico highways vehicles and/or motor vehicle engines having altered VINs. Section 66–3–507 contains no restrictions directly interfering with interstate commerce. It does not prohibit or exclude Trujillo, a California resident, from access to New Mexico highways. It does not treat New Mexico resident truckers and out-of-state resident truckers differently. The statute merely places a restriction, in the valid exercise of the State of New Mexico's police power, on the manner in which trucking can be done within this State by "[a]ny person." *See* § 66–3–507(A). This statute does not directly interrupt the free flow of interstate commerce *with respect to proper subjects of that commerce,* i.e., those vehicles/engines, having intact and unaltered VINs. Section 66–3–507 constitutes, therefore, a valid exercise of the police power of the State of New Mexico, not directly interfering with or burdening interstate commerce.

**20.** We next consider whether Section 66–3–507 is in conflict with federal legislation and whether Congress has preempted the field of altered VIN regulation. Interstate highways are instrumentalities of interstate commerce within the meaning of Article I, Section 8 of the United States Constitution. "It is nevertheless established that the states are not wholly precluded from exercising their police power in matters of local concern even though they may thereby indirectly affect interstate commerce." *Roberts,* 70 N.M. at 94, 370 P.2d at 813; *see also O'Cheskey,* 93 N.M. at 320, 600 P.2d at 266.

Congress, in enacting legislation within its constitutional authority over interstate commerce, will not be deemed to have intended to strike down a state statute designed to protect the health and safety of the public unless its purpose to do so is clearly manifested, or unless the state law,

in terms or in its practical administration, conflicts with the Act of Congress, or plainly and palpably infringes its policy. *Roberts,* 70 N.M. at 96, 370 P.2d at 815.

21. As regards this case, Congress has not preempted the field of highway regulation with regard to the removal of vehicles/engines having altered VINs. There is, accordingly, no conflict between federal legislation relating to these matters and New Mexico's statute seeking to regulate alteration of VINs as a health and welfare measure.

### III. Subject Matter Jurisdiction.

22. Trujillo contends that the traditional principles of *in rem* jurisdiction require the presence of the *res* within the jurisdiction and power of the court. In this case, Trujillo argues that the First Judicial District Court did not have subject matter jurisdiction over the truck engine impounded in a different judicial district. Trujillo also argues that the *res* at issue in this case, as evidenced by the caption of the State's petition, is actually the entire Peterbilt tractor/trailer, including the Engine. Since the State released the tractor and allowed it to be towed without its Engine back to California prior to the State's filing of the petition on November 9, 1994, Trujillo argues, the *res* that is the subject matter of the litigation is outside the jurisdiction of New Mexico and "ceased to be a proper *res* when the ... engine was lifted out and the trailer [was] towed back to California." We are not persuaded.

23. First, venue is not to be equated with jurisdiction. *See Jones v. New Mexico State Highway Dep't,* 92 N.M. 671, 672, 593 P.2d 1074, 1075 (1979). The essentials for jurisdiction are stated in *Heckathorn v. Heckathorn,* 77 N.M. 369, 371, 423 P.2d 410, 412 (1967), as jurisdiction over the parties; jurisdiction of subject matter; and power or authority to decide the matter presented. "Jurisdiction goes to the power of a court to entertain the cause, while venue simply goes to the convenient and proper forum." *In re Estate of Owens,* 89 N.M. 420, 422, 553 P.2d 700, 702 (1976). As the State points out, in this case Trujillo never requested a change of venue. Trujillo's failure to challenge the venue of the First Judicial District Court constitutes a waiver of that defense or claim for relief. *See* NMRA 1997, 1–012(H).

24. Second, with regard to the jurisdiction of the First Judicial District Court, we are mindful of the following legal principles. The district courts of New Mexico were established by the constitution of New Mexico as courts of general jurisdiction, extending statewide with their authority derived from the constitution unless specifically excepted by the constitution. *See* N.M. Const. art. VI, § 13; *State ex rel. Bd. of Comm'rs v. Kiker,* 33 N.M. 6, 7, 261 P. 816, 816 (1927). The question to be answered in determining jurisdiction in *in rem* cases is whether the applicable court has control over the *res. In re Forfeiture of One 1980 Honda Accord,* 108 N.M. 274, 275, 771 P.2d 982, 983 (Ct.App.1988). When the action is *in rem,* a court either has possession of the property in dispute or must effectively control it to grant the relief sought. *Id.*

25. In this case, even though the truck body itself was removed from New Mexico and towed to California, the actual *res,* i.e., the Engine, involved in this action remained in the custody of the New Mexico State Police. The First Judicial District Court obtained control over the Engine, and, consequently, *in rem* jurisdiction over the *res* by the filing of the petition in the First Judicial District Court, in Santa Fe County, the site of the home office of the New Mexico State Police, the governmental entity that impounded the Engine. *See id.*

26. Moreover, our New Mexico Supreme Court has recognized that once an appearance has been made by a claimant in an *in rem* action then that court has *in personam* jurisdiction over that party, i.e., in this case, Mr. Trujillo and his claim as owner of the Engine. *See Devlin v. State ex rel. N.M. State Police Dep't,* 108 N.M. 72, 74, 766 P.2d 916, 918 (1988) ("[I]n personam jurisdiction may exist concurrently with in rem jurisdiction," and certain federal authorities "have asserted jurisdiction in forfeiture actions over parties who have appeared, regardless of the location of the res.").

**394**

27. Hence, the district court in this case properly obtained control and, consequently, *in rem* jurisdiction over the Engine upon the State's filing of the petition in the home jurisdiction of the governmental entity that impounded the Engine. Trujillo's response to the petition and his appearance in the matter, moreover, allowed the matter to proceed also on the basis of *in personam* jurisdiction. Trujillo's appearance and failure to challenge in his response the personal jurisdiction and venue of the First Judicial District Court constituted a waiver of those claims.

28. In sum, we are not persuaded by Trujillo's arguments that the "real" *res* in this matter by virtue of the case caption is the Peterbilt tractor/trailer, and that the "real" *res*, therefore, is not in the possession or control of any district court in the State of New Mexico, because it was removed from New Mexico and towed to California with the permission of the New Mexico State Police before the petition was filed. We believe that it is evident from the wording of the petition and other pleadings in this case that the *res* at issue is the Engine of the Peterbilt tractor/trailer, not the tractor/trailer itself. *See, e.g., Mitchell v. Dona Ana Sav. & Loan Ass'n, F.A.,* 111 N.M. 257, 258, 804 P.2d 1076, 1077 (1991).

### CONCLUSION

29. Based on the foregoing, we affirm the district court on all issues.

30. **IT IS SO ORDERED.**

DONNELLY and WECHSLER, JJ., concur.