Certiorari Denied, October 8, 2014, No. 34,887

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-111**

**Filing Date:  September 8, 2014**

**Docket No. 32,774**

**STATE OF NEW MEXICO,**

> **Plaintiff-Appellee,**

**v.**

**CHRISTOPHER ALLEN,**

> **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John Dean, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Office of the Public Defender
Jorge A. Alvarado, Chief Public Defender
B. Douglas Wood III, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**VIGIL, Judge.**

**{1}**     This is an identity theft case.  The question presented is whether Defendant can be prosecuted in New Mexico when he never set foot in New Mexico, and all the acts of using Victim's identity occurred in other states.  Concluding that New Mexico has jurisdiction to

1

prosecute Defendant, we affirm.

**BACKGROUND**

**{2}** Victim attempted to obtain a New Mexico driver's license and discovered that someone had used his identifying information to obtain an Arizona driver's license. A police investigation revealed that Defendant used Victim's identity to obtain a driver's license in Arizona, rent cars in Arizona, Nevada, and Georgia, and to provide booking information upon his arrest in Georgia. It is undisputed that none of the acts of using Victim's identity took place in New Mexico and that Victim resided in San Juan County, New Mexico at the time of the transactions. The State charged Defendant with eight counts of identity theft contrary to NMSA 1978, Section 30-16-24.1(A) (2009), which provides:

> Theft of identity consists of willfully obtaining, recording or transferring personal identifying information of another person without the authorization or consent of that person and with the intent to defraud that person or another or with the intent to sell or distribute the information to another for an illegal purpose.

**{3}** Defendant filed a motion to dismiss for lack of jurisdiction. The motion focused on the fact that the alleged crimes took place in Arizona, Nevada, and Georgia–not New Mexico. He argued that the fact that Victim resides in New Mexico is irrelevant because under the United States and New Mexico constitutions, "[a] crime must be prosecuted in the jurisdiction where it was committed." The State opposed the motion, asserting that Section 30-16-24.1(G) grants New Mexico jurisdiction because under Section 30-16-24.1(G)(1), the crime is deemed to have been committed in the county where the victim resides. Defendant insisted that Section 30-16-24.1(G) is solely a *venue* statute, relevant in cases where New Mexico otherwise has jurisdiction and that Section 30-16-24.1(G) cannot confer New Mexico with jurisdiction to prosecute crimes committed outside of New Mexico. Defendant asserts to interpret Section 30-16-24.1(G) otherwise, would render it unconstitutional.

**{4}** The district court denied Defendant's motion. The district court did not rely on Section 30-16-24.1(G), ruling instead:

> 1. If any of the elements of the crime of theft of identity occurred in New Mexico, [the district c]ourt has subject matter jurisdiction.

> 2. One element of the crime is that the alleged offender used the personal identifying information of another without the authorization of the owner of the personal identifying information.

> 3. The "without authorization" element of theft of identity can only occur where the owner of the personal identifying information resides.

2

4.      The State alleges that [Victim] did not authorize the use of his personal identifying information by . . . Defendant and that [Victim] resides in San Juan County, New Mexico.

5.      If these allegations are proven, the "without authorization" element occurred in New Mexico and [the district c]ourt has subject matter jurisdiction over the alleged crimes and . . . Defendant's *Motion to Dismiss For Lack of Jurisdiction* should be denied.

(Footnote omitted).

**{5}**      Thereafter, Defendant plead guilty to two of the counts of identity theft, reserving his right to appeal the denial of the motion to dismiss. This appeal followed.

## DISCUSSION

**{6}**      Defendant argues that the district court erred as a matter of law in ruling that the "without authorization" element of identity theft can only occur where the owner of the personal identifying information resides. Thus, Defendant asserts, the district court erred in concluding that it had jurisdiction because Victim lived in New Mexico, and a New Mexico district court has jurisdiction over the offense if any of the elements of theft identity occurred in New Mexico. It is not necessary for us to determine whether the "without authorization" of the crime must occur where the victim resides because, as discussed below, we conclude that the district court otherwise had jurisdiction. "As a general rule, however, we will uphold the decision of a district court if it is right for any reason." *State v. Ruiz*, 2007-NMCA-014, ¶ 38, 141 N.M. 53, 150 P.3d 1003; *see also State v. Wilson*, 1998-NMCA-084, ¶ 17, 125 N.M. 390, 962 P.2d 636 ("Appellate courts usually apply the right for any reason basis of affirmance to strictly legal questions.").

## A.      Standard of Review

**{7}**      Our standard of review is de novo for three reasons. First, issues of subject matter jurisdiction are reviewed under a de novo standard. *State v. Gutierrez*, 2011-NMCA-088, ¶ 3, 150 N.M. 505, 263 P.3d 282 ("'We review jurisdictional issues . . . under a de novo standard of review.'" (quoting *State v. Heinsen*, 2005-NMSC-035, ¶ 6, 138 N.M. 441, 121 P.3d 1040)); *see State v. Chavarria*, 2009-NMSC-020, ¶ 11, 146 N.M. 251, 208 P.3d 896 ("Questions regarding subject matter jurisdiction are questions of law which are subject to de novo review." (internal quotation marks and citation omitted)). Second, because the pertinent facts are undisputed, we review de novo whether the law was correctly applied to those facts. *See State v. Gutierrez*, 2004-NMCA-081, ¶ 4, 136 N.M. 18, 94 P.3d 18 (stating that when the material facts are undisputed, we apply a de novo standard of review to the district court's application of the law to those facts). Finally, to the extent we are required to construe Section 30-16-24.1, our review is de novo. *See State v. Smith*, 2004-NMSC-032, ¶ 8, 136 N.M. 372, 98 P.3d 1022 ("We review questions of statutory interpretation [de

3

novo].”).

**B.      Jurisdiction Versus Venue**

**{8}**      The State insists that because the district court is a court of general jurisdiction under Article VI, Section 13 of the New Mexico Constitution with jurisdiction to try an identity theft offense, and the district court obtained personal jurisdiction over Defendant, the issue actually presented is one of venue, not jurisdiction.  We disagree.

**{9}**      It is clear that “venue is not to be equated with jurisdiction.”  *State ex rel. Dep’t of Pub. Safety v. One 1986 Peterbilt Tractor*, 1997-NMCA-050, ¶ 23, 123 N.M. 387, 940 P.2d 1182; *see Kalosha v. Novick*, 1973-NMSC-010, ¶¶ 24-25, 84 N.M. 502, 505 P.2d 845 (explaining that venue and jurisdiction are distinct concepts and overruling cases to the extent that they treat them as the same).  “Jurisdiction goes to the power of a court to entertain the cause, while venue simply goes to the convenient and proper forum.”  *One 1986 Peterbilt Tractor*, 1997-NMCA-050, ¶ 23 (internal quotation marks and citation omitted).  Nevertheless, limits on jurisdiction and venue may sometimes overlap.  Professor LaFave explains:

> The most common overlap stems from the jurisdictional limits that restrict by reference to the geographical locus of the offense the authority of the judiciary to apply the laws of the particular government (national, state, or municipality) of which it is a part. . . . [S]uch jurisdictional limits are tied to the territorial reach of the particular government’s legislative power.  If the events that would give rise to a criminal charge occurred beyond that territorial reach, then the government cannot grant to its courts the authority to apply its criminal laws to those events.  If the government’s legislative power could reach those events, then the judiciary of that government is said to have ‘jurisdiction’ over the offense.  To say that the judiciary has such jurisdiction, however, is not to say that every judicial district within that judiciary is a proper locality for the prosecution of the offense.  The determination of proper locality is what the setting of venue is about.  It looks to the convenience of the forum rather than the territorial reach of the government’s legislative power.

4 Wayne R. LaFave et al., *Criminal Procedure* § 16.1(a), at 692 (3d ed. 2007) (footnotes omitted); *see also People v. McLaughlin*, 606 N.E.2d 1357, 1359 (N.Y. 1992) (stating that venue refers to the proper county or place of trial and that the territorial jurisdiction which “goes to the very essence of the [s]tate’s power to prosecute”).

**{10}**      Thus, the State’s argument overlooks the requirement that a criminal charge must have been committed within the territorial reach of the court for it to have authority (i.e., jurisdiction) to try the case. *See Heckathorn v. Heckathorn*, 1967-NMSC-017, ¶ 10, 77 N.M. 369, 423 P.2d 410 (“There are three jurisdictional essentials necessary to the validity of

4

every judgment: jurisdiction of parties, jurisdiction of subject matter and power or authority to decide the particular matter presented.").

**{11}** At common law, the rule of territorial jurisdiction is that "[t]he criminal law of a state has no operation or effect beyond its geographical or territorial limits." *Rios v. State*, 733 P.2d 242, 245 (Wyo. 1987) (second alteration, internal quotation marks, and citation omitted); *see also State v. Dudley*, 581 S.E.2d 171, 176 (S.C. Ct. App. 2003) ("Common law has established 'a territorial principle as the jurisdictional foundation for the reach of state laws. Under that principle, states have power to make conduct a crime only if that conduct takes place, or its results occur, within the state's territorial borders.'" (quoting 4 Wayne R. LaFave et al., *Criminal Procedure* § 16.1(a), at 459 (2d ed.1999)), *aff'd as modified*, 614 S.E.2d 623; *In re Vasquez*, 705 N.E.2d 606, 610 (Mass. 1999) ("The general rule, accepted as 'axiomatic' by the courts in this country, is that a [s]tate may not prosecute an individual for a crime committed outside its boundaries.").

**{12}** On the other hand, there can be no territorial jurisdiction where conduct and its results both occur outside the state's territory. *See* 4 Wayne R. LaFave, *Criminal Procedure* § 16.4(c), at 838-39 (3d ed. 2007); *see also* Rollin M. Perkins, *The Territorial Principle in Criminal Law*, 22 Hastings L.J. 1155, 1165 (1970-71) (noting that a state may not "punish what is done within the exclusive territorial jurisdiction of another state"). The United States Supreme Court early in our nation's history expounded on this principle stating, "We answer [whether a state can prosecute a defendant for acts committed outside its borders], without hesitation, the jurisdiction of a state is co-extensive with its territory; co-extensive with its legislative power." *See United States v. Bevans*, 16 U.S. 336, 386-87 (1818).

**{13}** The principle has been recognized in New Mexico. *See State v. Mirabal*, 1989-NMCA-057, ¶ 12, 108 N.M. 749, 779 P.2d 126 (recognizing that "the record must establish that a defendant committed the crime in New Mexico" to satisfy jurisdictional requirements); *State v. Wise*, 1977-NMCA-074, ¶ 18, 90 N.M. 659, 567 P.2d 970 (explaining that venue relates to which county within a state is proper, and a challenge to venue can be waived, "so long as the crime occurred in New Mexico"); *State v. Ramirez*, 1976-NMCA-101, ¶ 23, 89 N.M. 635, 556 P.2d 43 (recognizing that a challenge that the state failed to prove the crime was committed in New Mexico as a challenge to New Mexico's authority to prosecute the crime), *overruled on other grounds by Sells v. State*, 1982-NMSC-125, 98 N.M. 786, 653 P.2d 162; *State v. Losolla*, 1972-NMCA-085, ¶¶ 4-5, 84 N.M. 151, 500 P.2d 436 (reversing the defendant's conviction for lack of jurisdiction because the state failed to prove that the defendant used drugs in New Mexico and "the law is that a crime must be prosecuted in the jurisdiction where it was committed"); *see generally*, New Mexico Criminal Uniform Jury Instructions (requiring that the jury find that the crime "happened in New Mexico"). Thus, Defendant correctly argues that his challenge to the State's authority to prosecute him is an attack on its jurisdiction.

**{14}** Defendant asserts that convicting him for crimes in which the actions occurred outside of New Mexico denies him due process of law. *See* N.M. Const. art II, § 18; U.S.

5

Const. amend. XIV. In support of his assertion, Defendant specifically refers us to provisions in the United States and New Mexico constitutions which guarantee a defendant the right to a trial where the crime is alleged to have been "committed" as sources of territorial jurisdiction. *See* N.M. Const. art. II, § 14 (stating that a defendant has a right to a trial by an impartial jury "of the county or district in which the offense is alleged to have been committed"); U.S. Const. amend. VI (stating that the accused has a right to a trial by an impartial jury "of the [s]tate and district wherein the crime shall have been committed"). However, these constitutional provisions have been construed as *venue* requirements, and not jurisdictional requirements. *See State v. Lopez*, 1973-NMSC-041, ¶ 12, 84 N.M. 805, 508 P.2d 1292 (explaining that Article II, Section 14 of the New Mexico Constitution and similar statutory provisions "have been construed and are considered as conferring a personal right or privilege of venue on the accused"); *United States v. Passodelis*, 615 F.2d 975, 976-77 (3d Cir. 1980) (discussing United States Supreme Court cases addressing the Sixth Amendment as "[a] venue provision[] of the Constitution"). Thus, we do not construe these constitutional provisions as sources of territorial jurisdiction. *See Rios*, 733 P.2d at 245 (rejecting the proposition that the Sixth Amendment is a source of territorial jurisdiction for Wyoming state courts because it is a venue provision). We now turn to whether New Mexico exceeded its jurisdictional limits by prosecuting Defendant for acts he committed in other states.

**B.      Evolution of Territorial Jurisdiction**

**{15}**      Historically, the concept of territorial jurisdiction was strictly applied. *See Dudley*, 581 S.E.2d at 177 (explaining that "[u]nder the historical strict territorial principle, a state court had jurisdiction only over those crimes which occurred entirely within that state's boundaries; if any essential element occurred in another state, neither possessed jurisdiction over the criminal offense. Under this view of jurisdiction, only one state could have jurisdiction over a particular crime." (internal quotation marks and citation omitted)). Early on, this jurisdictional loophole was addressed legislatively in the context of murders where the stroke was committed in one state and the fatal blow received in another. In *State v. Hall*, 19 S.E. 602 (N.C. 1894), the North Carolina Supreme Court noted that in ancient times it was unclear whether a murder should be prosecuted where the fatal blow was struck or where it was received. As a result, states began enacting legislation providing for a prosecution where the blow was received. Such legislation was "never questioned" when applied to acts of murder spanning different counties within a state, "but where its provisions have been extended so as to affect the jurisdiction of the different states, its constitutionality has been vigorously assailed. Such legislation, however, has been very generally, if not, indeed, uniformly, sustained." *Id.* at 603. "Statutes of this character are founded upon the general power of the legislature, except so far as restrained by the constitution of the commonwealth and the United States, to declare any willful or negligent act which causes an injury to person or property within its territory to be a crime." *Id.* The court added that the validity of these types of statutes "seems to be undisputed; and indeed it has been held in many jurisdictions that such legislation is but in affirmance of the common law." *Id.*

6

**{16}** In *Strassheim v. Daily*, 221 U.S. 280 (1911), the United States Supreme Court expanded the limits of strict territorial jurisdiction in the absence of any legislation. In *Strassheim*, the defendant was indicted in Michigan for bribery and obtaining money from the state of Michigan by false pretenses, based upon his involvement in selling the state used machinery represented as new. *Id.* at 281-82. He was arrested in Illinois and contested his extradition to Michigan, arguing that Michigan lacked jurisdiction because the alleged acts were completed entirely in Illinois. The defendant argued, and the Court assumed, that none of his acts were committed in Michigan. Nevertheless, the Court opined,

> [T]he usage of the civilized world would warrant Michigan in punishing him, although he never had set foot in the state until after the fraud was complete. Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a state in punishing the cause of the harm as if he had been present at the effect, if the state should succeed in getting him within its power.

*Id.* at 284-85. From *Strassheim* we conclude that if a crime has a detrimental effect in a state, that state has territorial jurisdiction to prosecute the perpetrator notwithstanding that the acts were committed entirely within another state.

**{17}** Applying the detrimental effects theory, many states have enacted laws that focus on where the effects of a criminal act are felt to establish territorial jurisdiction. *See* 4 Wayne R. LaFave et al., *supra*, § 16.4(c), at 847-48 ("A substantial majority of the states today have statutes that adopt an interpretation of the territorial principle substantially more expansive than the traditional common law position[, s]upported by the broad view of the territorial principle set forth by Justice Holmes in . . . *Strassheim*[.]"); *Dudley*, 581 S.E.2d at 177 (listing samples of such statutes). The constitutionality of such legislation has been repeatedly assailed and upheld. *People v. Govin*, 572 N.E.2d 450, 454 (Ill. App. Ct. 1991) (upholding the constitutionality of a statute conferring jurisdiction if the result occurs in the state based on *Strassheim*); *State v. Paiz*, 777 S.W.2d 575, 577 (Tex. Ct. App. 1989) (upholding the constitutionality of statutes conferring Texas with jurisdiction over the defendant who failed to pay child support for a child living in Texas although the defendant was not a resident of Texas, concluding that "Texas courts have jurisdiction over the subject matter of this cause and are justified in punishing the acts or omissions of [the defendant] even though he neither resided nor visited Texas nor violated a Texas court order" because the detrimental effects of the defendant's nonpayment of child support were felt in Texas), *aff'd*, 817 S.W.2d 84; *see also Rios*, 733 P.2d at 246-49 (discussing thoroughly decisions from other states regarding the impact of *Strassheim*); *see also* 4 Wayne R. LaFave et al., *supra*, § 16.4(c), at 855 ("Courts have regularly upheld the constitutionality of the expanded territorial jurisdiction provided by territorial scope legislation. Because such legislation adheres to the territorial principle, it is held not to violate due process and to be consistent with the Sixth Amendment's 'vicinage clause' (should it be applicable to the states)." (footnote omitted)).

**C.     Section 30-16-24.1(G)**

**{18}**     Defendant acknowledges the impact of *Strassheim* in this case, but insists that the district court must have been able to point to a specific legislative enactment that encompasses the detrimental effects theory of *Strassheim* and therefore confers New Mexico with jurisdiction.  We disagree with Defendant that New Mexico's territorial jurisdiction must be expressed by a statute.  The principles recognized by Justice Holmes in *Strassheim* provide the basis for New Mexico's exercise of jurisdiction in the absence of legislation. *See Dudley*, 581 S.E.2d at 525-26 (discussing additional decisions recognizing the detrimental effects doctrine set forth in *Strassheim* independent of any legislation and going on to explain that the absence of such legislation is not dispositive); *Rios*, 733 P.2d at 249 ("While Wyoming does not have a specific statute which permits the exercise of jurisdiction when extraterritorial conduct causes a result in this state, the concept articulated in *Strassheim* . . . does not depend upon the existence of such a statute."); *In re Vasquez*, 705 N.E.2d at 611 (holding that a state is not precluded from relying on rule in *Strassheim*—even absent a statute—given the "*Strassheim* Court itself made no reference to the need for such a statutory provision").

**{19}**     Nonetheless, the Legislature enacted Section 30-16-24.1(G). Section 30-16-24.1(G) in its entirety provides:

> G.     In a prosecution brought pursuant to this section, the theft of identity or obtaining identity by electronic fraud shall be considered to have been committed in the county:
> (1)     where the person whose identifying information was appropriated, obtained or sought resided at the time of the offense; or
> (2)     in which any part of the offense took place, regardless of whether the defendant was ever actually present in the county.While Section 30-16-24.1(G) necessarily relates to venue, we believe it also has an impact upon territorial jurisdiction.  The crime of identity theft necessarily affects the victim, and Section 30-16-24.1(G) expressly provides that the crime is "considered to have been committed" in the county where the victim resides.  This language therefore accomplishes a dual purpose.  First, it establishes the proper county within New Mexico where the crime may be prosecuted (venue).  Second, it sets forth a legislative determination that because the crime has an effect upon the victim in New Mexico, New Mexico has territorial jurisdiction over the offense, even if the acts are committed in another state. *See State v. Ogden*, 1994-NMSC-029, ¶ 24, 118 N.M. 234, 880 P.2d 845 ("The principal command of statutory construction is that the court should determine and effectuate the intent of the [L]egislature, using the plain language of the statute as the primary indicator of legislative intent[.]" (citations omitted)).  Here, Victim encountered issues trying to get a driver's license in New Mexico, and Victim was mailed rental car bills in New Mexico that were incurred by Defendant outside of New

8

Mexico. Defendant's extraterritorial actions had detrimental effects upon Victim in New Mexico. Therefore, whether pursuant to Section 30-16-24.1(G), or *Strassheim*, New Mexico had jurisdiction to prosecute Defendant.

**D.     Defendant's Remaining Arguments**

**{20}**     Defendant argues that Article II, Section 14 of the New Mexico Constitution "may" provide greater protection than the United States Constitution, implying that application of the detrimental effects theory of *Strassheim* is unconstitutional in New Mexico. He supports this proposition with nothing more than a citation to Article II, Section 14 of the New Mexico Constitution. That section mirrors the Sixth Amendment of the United States Constitution so, without more, we are unpersuaded that on its face the New Mexico Constitution affords Defendant with greater protection. Moreover, we have already explained that Article II, Section 14 relates to venue, not jurisdiction, so it is of no aid to Defendant's attack on *Strassheim*. Since Defendant failed to articulate and support why he should be afforded greater protection in New Mexico, we conclude that application of the detrimental effects theory in New Mexico is constitutional. *See In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 (holding that an appellate court will not consider an issue if no authority is cited in support of the issue).

**{21}**     In addition, although Defendant repeatedly asserts that his appeal relates to jurisdiction, not venue, he nonetheless raises the issue of venue  at one point in his brief. To the extent Defendant also intends to challenge the constitutionality of venue in San Juan County, challenges to venue, unlike jurisdiction, can be waived, *see Wise*, 1977-NMCA-074, ¶ 18, and Defendant did not challenge the propriety of venue in San Juan County in the district court. *One 1986 Peterbilt Tractor*, 1997-NMCA-050, ¶ 23 (holding that the defendant's failure to request a change of venue constitutes a waiver of that defense or claim for relief).

**CONCLUSION**

**{22}**     The district court order denying Defendant's motion to dismiss for lack of jurisdiction is affirmed.

**{23}     IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

_____
**RODERICK T. KENNEDY, Chief Judge**

9

_____
**M. MONICA ZAMORA, Judge**