This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38693**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DAIN SCHULT,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Douglas R. Driggers, District Judge**

Hector H. Balderas, Attorney General
Van Snow, Assistant Attorney General
Santa Fe, NM

for Appellee

Patrick J. Martinez & Associates
Patrick J. Martinez
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}**     Defendant Dain Schult appeals his convictions of fraud, contrary to NMSA 1978, Section 30-16-6(F) (2006); conspiracy to commit fraud (over $20,000), contrary to Section 30-16-6(F) and NMSA 1978, Section 30-28-2 (1979); securities fraud, contrary to NMSA 1978, Section 58-13C-501 (2009); and offer or sale of an unregistered security, contrary to NMSA 1978, Section 58-13C-301 (2009). Defendant raises four arguments on appeal. He argues that (1) the district court lacked subject matter jurisdiction, (2) the district court plainly erred by admitting the testimony of other investors, (3) the district court erred in failing to properly instruct the jury and, (4) the

security Defendant sold was exempt from New Mexico's reporting requirements. Unpersuaded by these arguments, we affirm.

## BACKGROUND

**{2}** In May 2011, Las Cruces, New Mexico residents Laura and Curt Miller (collectively, the Millers) were approached by a friend and fellow Las Cruces resident Joel Hixon about an investment opportunity with Defendant's company American Radio Empire, Inc. (American Radio). Hixon told the Millers that American Radio purchased radio stations and put the stations' programming on the internet. Hixon told the Millers that Defendant wanted to trade securities in American Radio on a public stock exchange and asked the Millers to invest $25,000. Hixon spoke with the Millers several times in person and over the phone, and the Millers met with Defendant at Hixon's house in Las Cruces. Following additional phone calls between Defendant and the Millers, the Millers met with Defendant at a restaurant in Texas, and ultimately decided to accept Defendant's offer. Mrs. Miller wired $25,000 from her account at Pioneer Bank in Las Cruces to American Radio in Texas. Defendant sent her a promissory note, binding American Radio to repay the $25,000. The note provided that if American Radio failed to repay the amount owed, the Millers would receive shares of the company's restricted common stock. American Radio ultimately failed to pay the Millers the amount owed under the promissory note or issue them stock. The Millers subsequently learned that Defendant and Hixon had made false representations and omitted material information. Defendant was arrested and charged with fraud, conspiracy to commit fraud, securities fraud, and offer or sale of an unregistered security. The jury convicted Defendant on all counts.

## DISCUSSION

### I.    The District Court Had Jurisdiction

**{3}** Defendant asserts the district court lacked jurisdiction. Defendant claims that the Millers' decision to invest was made in Texas, and points out that the wire transfer, while originating in New Mexico, was ultimately concluded in Texas. Defendant relies on *State v. Faggard*, 1918-NMSC-133, ¶ 4, 25 N.M. 76, 177 P. 748, for the proposition that fraud occurs "where the offense was consummated by the obtaining of the property[.]" We review jurisdictional issues de novo. *State v. Heinsen*, 2005-NMSC-035, ¶ 6, 138 N.M. 441, 121 P.3d 1040.

**{4}** Defendant claims that the rule of law announced in *Faggard*—that jurisdiction lies with the state in which the offense was completed—has not been changed or modified in more than one hundred years since the decision. Defendant misrepresents the evolution of the law on this issue. Under the common law doctrine of territorial jurisdiction, state courts could only prosecute "those crimes which occurred entirely within that state's boundaries[.]" *State v. Allen*, 2014-NMCA-111, ¶ 15, 336 P.3d 1007 (internal quotation marks and citation omitted). It remains the law "that a criminal charge must have been committed within the territorial reach of the court for it to have authority

(i.e., jurisdiction) to try the case." *Id.* ¶ 10. However, in *Strassheim v. Daily*, 221 U.S. 280, 285 (1911), the Supreme Court of the United States departed from the common law doctrine of territorial jurisdiction by holding that state courts may exercise jurisdiction over "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it[.]" New Mexico has recognized the *Strassheim* Court's expanded view of territorial jurisdiction. *See Allen*, 2014-NMCA-111, ¶ 16 ("[I]f a crime has a detrimental effect in a state, that state has territorial jurisdiction to prosecute the perpetrator notwithstanding that the acts were committed entirely within another state."). In addition, the Legislature has specifically declared that New Mexico courts may try a defendant for selling an unregistered security and committing securities fraud if the offer to sell "is made in New Mexico or the offer to purchase or the purchase is made and accepted in New Mexico." NMSA 1978, § 58-13C-610(A) (2009). Under the current statutory scheme "an offer to sell or to purchase a security is made in New Mexico, whether or not either party is then present in New Mexico, if the offer: (1) originates from within New Mexico; or (2) is directed by the offeror to a place in New Mexico and received at the place to which it is directed." Section 58-13C-610(C).

**{5}** "[J]urisdiction is satisfied if the trier of fact can infer from the evidence that the crime occurred in the state." *State v. Mirabal*, 1989-NMCA-057, ¶ 12, 108 N.M. 749, 779 P.2d 126. In this case, a jury could infer from the facts that Defendant produced a detrimental effect in New Mexico. Defendant was charged with fraud, which "consists of the intentional misappropriation or taking of anything of value that belongs to another by means of fraudulent conduct, practices or representations." Section 30-16-6(A). In this case, the alleged fraudulent acts occurred in New Mexico; Hixon and Defendant solicited the Millers in New Mexico by phone and in person at Hixon's house and made false representations and deceptive omissions.[1] The fraudulent offer to sell the unregistered security also fell within Section 58-13C-610(C)'s provisions in that it was "directed by the offeror to a place in New Mexico"—the Miller's home in Las Cruces— and "received at the place to which it [was] directed"—Defendant's bank account in Texas." Because a jury could infer from the facts that Defendant produced a detrimental effect in New Mexico, and because Defendant directed his offer "to a place in New Mexico," Defendant's argument is without merit, and we conclude that the district court had jurisdiction over the alleged crimes. *See id.*

## II.  The District Court Did Not Abuse Its Discretion in Admitting the Testimony of Other Investors

---

[1]"A misrepresentation for purposes of criminal fraud may include a deceptive silence or omission." *State v. Garcia*, 2015-NMCA-094, ¶ 15, 356 P.3d 45, *rev'd on other grounds*, 2016-NMSC-034, 384 P.3d 1076. In this case, Defendant did not reveal that American Radio had been sued by a previous investor for failing to honor a promissory note, did not tell the Millers that American Radio only had $80.68 in its operating account when they invested, and did not tell the Millers that American Radio had stopped filing periodic reports with the Securities and Exchange Commission in 2007. Defendant and Hixon told the Millers by phone and at Hixon's house in Las Cruces that they would use the $25,000 to help take American Radio public and to pay associated legal fees, but none of the investment funds were actually used for these purposes. Mrs. Miller then wired money from her account at a Las Cruces bank to Defendant.

**{6}** Defendant next contends that the district court abused its discretion when it permitted the State to introduce the testimony of other investors that Defendant had defrauded in New Mexico. Defendant's argument is two-fold—Defendant argues that the testimony from the other American Radio investors was inadmissible character evidence under Rule 11-404(B)(1) NMRA, and that the testimony was more prejudicial than probative under Rule 11-403 NMRA. Defendant fails to develop an argument as to why the evidence was inadmissible under Rule 11-404(B). Accordingly, we limit our analysis to the admissibility of the evidence under Rule 11-403. *See State v. Gonzales*, 2011-NMCA-007, ¶ 19, 149 N.M. 226, 247 P.3d 1111 (stating that "this Court has no duty to review an argument that is not adequately developed").

**{7}** In addition, because Defendant failed to object to the testimony of the other investors, Defendant's arguments are unpreserved, and we consider only whether "the admission of the evidence constitutes plain error." *See State v. Montoya*, 2015-NMSC-010, ¶ 46, 345 P.3d 1056 (internal quotation marks and citation omitted). Plain error occurs "if the alleged error affected the substantial rights of the accused." *Id.* (internal quotation marks and citation omitted). We "must be convinced that admission of the testimony constituted an injustice that created grave doubts concerning the validity of the verdict." *Id.* (internal quotation marks and citation omitted). We conclude the district court did not plainly err in admitting the testimony of the other investors.

**{8}** Rule 11-403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Evidence is relevant if . . . it has any tendency to make a fact more or less probable" and "the fact is of consequence in determining the action." Rule 11-401 NMRA. The mere fact "that evidence prejudices [the] defendant is not grounds for its exclusion." *State v. Watley*, 1989-NMCA-112, ¶ 23, 109 N.M. 619, 788 P.2d 375. The prejudicial effect, rather, must substantially outweigh its probative value. *State v. Salgado*, 1991-NMCA-111, ¶ 11, 112 N.M. 793, 819 P.2d 1351 (citing Rule 11-403).

**{9}** To convict Defendant of securities fraud, the State had to prove that he "used a plan or scheme to deceive or cheat others[.]" *See* UJI 14-4302 NMRA. In addition, the State had to refute Defendant's claim that he never intended to "deceive or cheat" the Millers, but rather, that American Radio was a legitimate business that failed. We have previously held that a defendant's intent may be shown by evidence demonstrating a "modus operandi and common plan or scheme[.]" *State v. Carson*, 2020-NMCA-015, ¶ 25, 460 P.3d 54, *cert. denied*, 2020-NMCERT-___ (No. S-1-SC-38128, Feb. 6, 2020). In this case, the testimony of the other investors was relevant to and probative of both Defendant's intent and the existence of a common scheme or plan. Each of these investors testified that Hixon approached them about investing in American Radio with Defendant. The investors testified that they were told that their money would be used for various legitimate business purposes such as investing in stock markets and buying radio stations, providing the necessary capital to allow the company to go public, secure larger investments, and repay an old investor, or to assist in paying legal fees

associated with taking the company public. The previous investors all testified that Defendant and Hixon misled them or failed to disclose material information and never paid their promissory notes. The fact that Defendant had conspired with Hixon to approach other investors with similar offers and promises, and then defrauded those investors by failing to repay their promissory notes is clearly probative of Defendant's intent and a common scheme.

**{10}** Nevertheless, without citing to the record proper or any authority, Defendant argues that the probative value of the evidence "was substantially outweighed by the dangers of unfair prejudice, confusion of the issues, and misleading the jury." Defendant contends that the State "presented [the other investors] as victims of a similar crime for which [Defendant] was on trial" and that their testimony "misled the jury to consider their statuses as victims[.]" Defendant fails to cite to where in the record he believes the prejudicial testimony occurred or which specific statements unfairly prejudiced the jury. *See State v. Jim*, 1988-NMCA-092, ¶ 3, 107 N.M. 779, 765 P.2d 195 ("It is [the] defendant's burden to bring up a record sufficient for review of the issues he raises on appeal."). Absent citations to the record and better developed argument, given the probative value of the witnesses' testimony, we are not persuaded that this evidence was outweighed by the danger of unfair prejudice. We conclude that the district court did not abuse its discretion in admitting the testimony of the other investors under Rule 11-403.

### III. Defendant Cannot Claim Error for His Proffered Jury Instruction

**{11}** Defendant contends that his proffered jury instruction did not accurately reflect the law as set forth in NMSA 1978, Section 58-13C-202(N) (2009) because it was contrary to the uniform jury instruction and the law in New Mexico concerning exempt transactions for securities. *See* § 58-13C-202 (listing requirements for transactions exempt from New Mexico's Uniform Securities Act reporting requirements); UJI 14-4321 NMRA (exempting certain transactions from registration under New Mexico securities law). As we explain below, we decline to address Defendant's claim of error.

**{12}** Because Defendant failed to preserve his argument below, we review his claim for fundamental error. *See State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *State v. Montelongo Esparza*, 2020-NMCA-050, ¶ 7, 475 P.3d 815 (internal quotation marks and citation omitted). It "cannot be invoked to remedy the defendant's own invited mistakes." *State v. Ortega*, 2014-NMSC-017, ¶ 34, 327 P.3d 1076 (internal quotation marks and citation omitted). Importantly, "[a] party may not be rewarded with a new trial when it invites jury instruction error and subsequently complains about that very error." *Id.*

**{13}** We need not address Defendant's arguments on the merits because he invited the alleged error he now complains about on appeal. In *State v. Padilla*, 1986-NMCA-063, 104 N.M. 446, 722 P.2d 697, we addressed a similar issue. In *Padilla*, the defendant tendered a voluntary manslaughter instruction and argued, against the state's

objection, that the evidence would support a finding of provocation. *Id.* ¶ 17. On appeal, however, he claimed that the instruction was issued in error. *Id.* ¶ 2. We concluded that no fundamental error occurred, reasoning that "[w]hen a defendant in the procedural setting of a criminal trial makes a tactical choice in pursuit of some real or hoped for advantage, he may not later urge his own action as a ground for reversing his conviction even though he may have acted to deprive himself of some constitutional right." *Id.* ¶ 18.

**{14}** Similarly, here, Defendant submitted the jury instruction to the district court and affirmatively argued in favor of the instruction that contained language directing the jury that they must find Defendant "not guilty of the sale of an unregistered security" if the jury also found that the transaction at issue was an exempt transaction under a particular federal regulation. In other words, defense counsel specifically sought to include this instruction rather than the uniform jury instruction because it supported defense counsel's litigation strategy. The State objected to Defendant's proposed instruction, claiming that Defendant had not introduced sufficient facts to warrant it. Nevertheless, the district court gave the instruction as requested by Defendant. We will not consider Defendant's claim of fundamental error, as Defendant was the one who requested the instruction he now complains of.

## IV.     Defendant Fails to Adequately Develop and Support His Argument That the Security at Issue Was a Federally Covered Security

**{15}** Defendant argues there was insufficient evidence for the jury to convict him of offer or sale of an unregistered security because "the State conceded that the securities registration was not revoked until after the investments were made. So, [according to Defendant,] at the time that the investments—or offers to invest—were made, the SEC had not revoked [American Radio's] securities registration status." Based on the State's alleged concession, Defendant argues that American Radio "was in compliance with New Mexico law concerning unregistered securities."

**{16}** Defendant fails to comply with the Rules of Appellate Procedure and fails to cite to the record proper in support of his argument. The Rules of Appellate Procedure require Defendant to state in his brief in chief "an argument which, with respect to each issue presented, shall contain a statement of the applicable standard of review, the contentions of the appellant, and a statement explaining how the issue was preserved in the court below, with citations to authorities, record proper, transcript of proceedings, or exhibits relied on." Rule 12-318(A)(4) NMRA. Defendant fails to state the applicable standard of review, how the issue was preserved and importantly fails to provide this Court with a single citation to the record supporting his argument. Additionally, Defendant fails to direct us to where in the record the State made such a concession or where in the record testimony was elicited that supports his claim that American Radio complied with New Mexico law on unregistered securities.
"We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104; *see also State v. Soutar*, 2012-NMCA-024, ¶ 14, 272 P.3d 154 (declining to

address an argument on appeal because of the defendant's failure "to cite to any portion of the record to support its factual allegations"). Because Defendant failed to cite to the record in support of his generalized argument and otherwise failed to comply with the Rules of Appellate Procedure, we decline to address this argument further.

**CONCLUSION**

**{17}**   We affirm.

**{18}   IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JACQUELINE R. MEDINA, Judge**

**SHAMMARA H. HENDERSON, Judge**